UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF THE STATE OF TEXAS
ABILENE DIVISION

TSEPHANYAH Y. HAWKINS,                          }
YAHCHANAN Y. HAWKINS and                        }
COURTROOM DATA SOLUTIONS, INC.,                 }
Plaintiffs,                                     }
                                                }
v.                                              }
                                                }
**THE HONORABLE JOHN W. WEEKS,**                }
in his personal capacity,                       }
**CLAUDIA HUTCHINSON,** in her personal         }
capacity and in her capacities with S.A.W       }
Solutions, Inc., StenoScribe, Incorporated,     }
Vocedit, Inc., and/or The South Carolina        }
School of Court Reporting, Inc.,                 }
**NORMAN OSTER,** in his personal capacity       } Civil Action No.
and in his capacities with S.A.W. Solutions,    }   1-05CV-184-C
Inc., StenoScribe Incorporated, Vocedit, Inc.,  }
and/or The South Carolina School of Court       }
Reporting, Inc.,                                }
**STENOSCRIBE, INCORPORATED,**                  }
**VICTORIA L. CARTER,**                          }
**MARILYN GARDNER,** in her personal             }
capacity and her capacities with The National   }
Institute of Realtime Reporters, Inc.,          }
**JOHN CHISTOLINI,** in his personal             }
capacity and his capacities with The National   }
Institute of Realtime Reporters, Inc.,          }
**THE NATIONAL INSTITUTE OF REALTIME**          }
**REPORTERS, INC.,**                            }
**S.A.W. SOLUTIONS, INC.,**                      }
**THE SOUTH CAROLINA SCHOOL OF**                }
**COURT REPORTING, INC.,**                      }
**VOCEDIT, INC.,**                              }
**CHARLES C. SELF, III,**                        }
**DONALD L. ANDERSON, JR.,**                    }
**WHITTEN & YOUNG, P.C.,**                      }
**CARTER LAW OFFICES,** and                      }
**CHISTOLINI AND DESIMONE, INC.**               }
Defendants                                      }

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

NOV 2 3 2005

CLERK, U.S. DISTRICT COURT
By _____
        Deputy

ANSWER OF THE SOUTH CAROLINA SCHOOL OF COURT REPORTING, INC.
TO PLAINTIFFS' FIRST AMENDED COMPLAINT                    PAGE 1

**ANSWER OF SOUTH CAROLINA SCHOOL OF COURT REPORTING
TO PLAINTIFFS' FIRST AMENDED COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

Come now THE SOUTH CAROLINA SCHOOL OF COURT REPORTING, INC.,

hereinafter referred to as "Defendant," and subject to its prior

motions filed under Rule 12(b), Fed. R. Civ. P., answer the numbered

paragraphs in the PLAINTIFFS' FIRST AMENDED COMPLAINT hereinafter

referred to as the "Complaint' as follows:

1.    Defendant denies that this Court possesses subject matter
jurisdiction under 18 U.S.C. §1595 under the allegations set forth
in the Complaint.

2.    Defendant denies that this Court possesses subject matter
jurisdiction under 28 U.S.C. §1331 under the allegations set forth
in the Complaint.

3.    Defendant denies that this Court possesses subject matter
jurisdiction under 28 U.S.C. §1343 under the allegations set forth
in the Complaint.

4.    Defendant denies that this Court possesses subject matter
jurisdiction under 18 U.S.C. §1961 under the allegations set forth
in the Complaint.

5.    Defendant denies that this Court possesses subject matter
jurisdiction under 28 U.S.C. §1367 under the allegations set forth
in the Complaint.

6.    Defendant denies that venue is proper in this District and
Division.

7.    Defendant neither admits nor denies the allegations of the
following paragraphs of the Complaint because they lack sufficient
knowledge or information at this time to form a belief as to their
truth:

| | | | | | | |
|----|----|----|-----|-----|-----|-----|
| 7  | 49 | 78 |     | 132 | 166 | 312 |
| 8  | 50 | 79 |     |     | 167 | 323 |
| 9  | 51 | 80 | 105 | 137 | 168 | 334 |
| 10 | 52 | 81 | 106 |     | 169 | 344 |
| 11 | 53 | 82 | 107 | 145 | 170 | 420 |

| 12 | 54 | 83 | 108 | 146 | 171 | 430 |
|----|----|----|-----|-----|-----|-----|
| 16 | 55 | 84 | 109 | 147 | 172 | |
| 22 | 56 | 85 | 110 | 148 | 173 | |
| 23 | 57 | 86 | 111 | 149 | 175 | |
| 25 | 58 | 87 | 112 | 150 | 183 | |
| 26 | 59 | 88 | 113 | 151 | 191 | |
| 27 | 60 | 89 | 114 | 152 | 199 | |
| 28 | 61 | 90 | 115 | 153 | 207 | |
| 29 | 62 | 91 | 116 | 154 | 215 | |
| 30 | 63 | 92 | 117 | 155 | 223 | |
| 31 | 64 | 93 | 118 | 156 | 231 | |
| 32 | 65 | 94 | 119 | 157 | 239 | |
| 33 | 66 | 95 | 120 | 158 | 247 | |
| 34 | 67 | 96 | 121 | 159 | 255 | |
| 35 | 68 | 97 | 122 | 160 | 263 | |
| 36 | 69 | 98 | 123 | 161 | 272 | |
| 37 | 75 | 99 | 124 | 162 | 280 | |
| 38 | 76 | 100 | 125 | 163 | 288 | |
| 39 | 77 | 101 | 126 | 164 | 296 | |
| 40 | | 102 | 127 | 165 | 304 | |
| 41 | | 103 | 128 | | | |
| 43 | | 104 | 129 | | | |
| 44 | | 1) pg 34 | 130 | | | |
| 45 | | | | | | |
| 46 | | | | | | |
| 48 | | | | | | |

8. Defendant denies the allegations in the following paragraphs of the Complaint:

| 70 | 185 | 225 | 265 | 302 | 339 | 391 |
|-----|-----|-----|-----|-----|-----|-----|
| 71 | 186 | 226 | 266 | 306 | 340 | 392 |
| 72 | 187 | 227 | 267 | 307 | 341 | 394 |
| 73 | 188 | 228 | 268 | 308 | 342 | 410 |
| 74 | 189 | 229 | 269 | 309 | 346 | 411 |
| 133 | 193 | 233 | 270 | 310 | 347 | 412 |
| 134 | 194 | 234 | 274 | 314 | 348 | 413 |
| 135 | 195 | 235 | 275 | 315 | 349 | 414 |
| 136 | 196 | 236 | 276 | 316 | 350 | 415 |
| 137 | 197 | 237 | 277 | 317 | 351 | 416 |
| 138 | 201 | 241 | 278 | 318 | 352 | 417 |
| 139 | 202 | 242 | 282 | 319 | 354 | 418 |
| 140 | 203 | 243 | 283 | 320 | 355 | 422 |
| 141 | 204 | 244 | 284 | 321 | 356 | 423 |
| 142 | 205 | 245 | 285 | 325 | 357 | 424 |
| 143 | 209 | 249 | 286 | 326 | 358 | 425 |

| 144 | 210 | 250 | 290 | 327 | 359 | 426 |
|-----|-----|-----|-----|-----|-----|-----|
|     | 211 | 251 | 291 | 328 | 360 | 427 |
|     | 212 | 252 | 292 | 329 | 362 | 428 |
|     | 213 | 253 | 293 | 330 | 363 | 431 |
| 177 | 217 | 257 | 294 | 331 | 364 | 432 |
| 178 | 218 | 258 | 298 | 332 | 386 | 433 |
| 179 | 219 | 259 | 299 | 336 | 387 | 434 |
| 180 | 220 | 260 | 300 | 337 | 388 | 435 |
| 181 | 221 | 261 | 301 | 338 | 390 | 436 |

9.    Pleading with particularity. Defendant answers the remaining paragraphs of the Complaint as follows:

13.    Defendant admits the allegation that it is a corporation formed under the laws of the state of South Carolina, on August 31, 2004, with its principal place of business being in South Carolina. (See Exhibit "A" attached hereto and incorporated herein for all purposes as if copied verbatim.

14. A.    Defendant neither admits nor denies the allegations, unless admitted herein because it lacks sufficient knowledge to form a belief as to their truth.

B. Defendant denies that any of its authorized agents, servants, or employees have criminally conspired with any other named Defendant in this action.

C. Defendant admits that Hutchison presently resides in South Carolina.

D. Hutchison on or after August 31, 2004 has at times been an agent, employee or servant of Defendant, but never with any relation to any Plaintiff.

E. Defendant denies that it has ever caused any damage of any type to any of the Plaintiffs since it was not in existence since August 31, 2004.

F. Defendant does state on information and belief that it utilizes a software program that Hutchinson does have an interest in, and Defendant is not sure exactly what interest, if any, Plaintiff Tsephhanyah Y. Hawkins, has in such system.

G. Based on information and belief, Defendant Hutchinson had her named changed to Riyyahnah Tipharahyah Hawkins.

H. Attached hereto as Exhibit "B" and incorporated herein for all purposes, is a true and correct authenticated copy of the **PROVISIONAL APPLICATION FOR PATENT, the original of which was filed with the UNITED STATES PATENT AND TRADEMARK OFFICE.** Such application was filed by the Plaintiff Tsephanyah Y Hawkins. As is evidenced by such document, it appears that Hutchison is a **co-inventor** with reference to the computerized court reporter system that is the basis of the

ANSWER OF THE SOUTH CAROLINA SCHOOL OF COURT REPORTING, INC.
TO PLAINTIFFS' FIRST AMENDED COMPLAINT                    PAGE 4

state court action and the computerized court reporter system
complained herein by the Plaintiffs. Therefore, it is this
Defendant's position that any usage of such reporter system would have
been with the express approval of Defendant Hutchison, who is a
co-inventor of such system.

15.    Defendant neither admits nor denies the allegations regarding
Hutchinson being an agent, employee, or servant of any other named
Defendant other than Defendant because it lacks sufficient knowledge
to form a belief as to their truth. Defendant admits that Hutchinson
on or after August 31, 2004 has at times been an agent, employee or
servant of Defendant, but never with any relation to any Plaintiff.
Defendant denies that any of its authorized agents, servants, or
employees have criminally conspired with any other named Defendant.

17.   Defendant denies that Hutchinson has done any authorized acts
as an authorized agent, servant, employee, or director of Defendant.
Defendant neither admits nor denies the allegations regarding
Hutchinson being an agent, employee, or servant of any other named
Defendant other than Defendant because it lacks sufficient knowledge
to form a belief as to their truth.

18.    Defendant neither admits nor denies the allegations because
it  lacks sufficient knowledge to form a belief as to their truth.
The Defendant denies it criminally conspired with the Defendant
Carter.

19.    Defendant neither admits nor denies the allegations unless
admitted herein because it lacks sufficient knowledge to form a belief
as to their truth. Defendant admits that Oster presently resides in
South Carolina. Defendant admits that Oster is employed as an
instructor.  Defendant admits that Oster on or after August 31, 2004,
has at times been an agent, servant or employee of Defendant, but never
with any relation to any Plaintiff. The Defendant denies it criminally
conspired with the Defendant Oster.

20.   Defendant neither admits nor denies the allegations because it
lacks sufficient knowledge to form a belief as to their truth. The
Defendant denies it criminally conspired with the Defendant NIRR.

21.   Defendant neither admits nor denies the allegations because it
lacks sufficient knowledge to form a belief as to their truth. The
Defendant denies it criminally conspired with the Defendant Gardner.

24.   Defendant neither admits nor denies the allegations because it
lacks sufficient knowledge to form a belief as to their truth. The

Defendant denies it criminally conspired with the Defendant Chistolini.

33.  Defendant neither admits nor denies the allegations because it lacks sufficient knowledge to form a belief as to their truth. The Defendant denies it criminally conspired with the Defendant Chistolini & DeSimone, P.C.

42.  Defendant neither admits nor denies the allegations because it lacks sufficient knowledge to form a belief as to their truth. The Defendant denies it corruptly conspired to obtain or provide labor and services to the Plaintiffs.

47.  Defendant neither admits nor denies the allegations because they lack sufficient knowledge to form a belief as to their truth, but denies that the issuance of the Temporary Injunction constitutes action under color of state law.

**First Claim for Relief**
**Deprivation of Property Without Due Process**

174. Defendant re-allege and incorporate their answers to paragraphs 1-173 as if set forth separately herein.

176. Paragraph 176 states a conclusion of law to which no answer is required. To the extent that an answer is required, the allegations are denied.

**Second Claim for Relief**
**Deprivation of Liberty Without Due Process**

182. Defendant re-allege and incorporate their answers to paragraphs 1-181 as if set forth separately herein.

184.  Paragraph 184 states a conclusion of law to which no answer is required. To the extent that an answer is required, the allegations are denied.

**Third Claim for Relief**
**Deprivation of 13th Amendment Right to be Free From Enslavement**

190. Defendant re-allege and incorporate their answers to paragraphs 1-189 as if set forth separately herein.

192.   Paragraph 192 states a conclusion of law to which no answer is required. To the extent that an answer is required, the allegations are denied.

**Fourth Claim for Relief**
**Deprivation of Freedom of Expression**

198.  Defendant re-allege and incorporate their answers to paragraphs 1-197 as if set forth separately herein.

200.   Paragraph 200 states a conclusion of law to which no answer is required. To the extent that an answer is required, the allegations are denied.

**Fifth Claim for Relief**
**Deprivation of Privacy**

206.  Defendant re-allege and incorporate their answers to paragraphs 1-205 as if set forth separately herein.

208.   Paragraph 208 states a conclusion of law to which no answer is required. To the extent that an answer is required, the allegations are denied.

**Sixth Claim for Relief**
**Deprivation of Property Without Due Process**

214.   Defendant re-allege and incorporate their answers to paragraphs 1-213 as if set forth separately herein.

216.   Paragraph 216 states a conclusion of law to which no answer is required. To the extent that an answer is required, the allegations are denied.

**Seventh Claim for Relief**
**Deprivation of 13th Amendment Right to be Free From Enslavement**

222.  Defendant re-allege and incorporate their answers to paragraphs 1-221 as if set forth separately herein.

224.   Paragraph 224 states a conclusion of law to which no answer is required. To the extent that an answer is required, the allegations are denied.

**Eighth Claim for Relief**
**Deprivation of Freedom of Expression**

230.  Defendant re-allege and incorporate their answers to paragraphs 1-229 as if set forth separately herein.

232.   Paragraph 232 states a conclusion of law to which no answer is required. To the extent that an answer is required, the allegations are denied.

**Ninth Claim for Relief**
**Deprivation of Privacy**

238.  Defendant re-allege and incorporate their answers to paragraphs 1-229 as if set forth separately herein.

240.   Paragraph 240 states a conclusion of law to which no answer is required. To the extent that an answer is required, the allegations are denied.

Tenth Claim for Relief
Deprivation of Property Without Due Process

246.  Defendant re-allege and incorporate their answers to paragraphs 1-229 as if set forth separately herein.

248.   Paragraph 248 states a conclusion of law to which no answer is required. To the extent that an answer is required, the allegations are denied.

**Eleventh Claim for Relief**
**Deprivation of 13th Amendment Right To Be Free From Enslavement**

254.  Defendant re-allege and incorporate their answers to paragraphs 1-229 as if set forth separately herein.

256.   Paragraph 256 states a conclusion of law to which no answer is required. To the extent that an answer is required, the allegations are denied.

**Twelfth Claim for Relief**
**Deprivation of Freedom of Expression**

262.  Defendant re-allege and incorporate their answers to paragraphs 1-229 as if set forth separately herein.

264.   Paragraph 264 states a conclusion of law to which no answer is required. To the extent that an answer is required, the allegations are denied.

**Thirteenth Claim for Relief**
**Deprivation of Privacy**

271.   Defendant re-allege and incorporate their answers to paragraphs 1 -270 as if set forth separately herein.

273.   Paragraph 273 states a conclusion of law to which no answer is required. To the extent that an answer is required, the allegations are denied.

**Fourteenth Claim for Relief**
**Deprivation of Property Without Due Process**

279.   The Defendant re-allege and incorporate their answers to paragraphs 1-278 as if set forth separately herein.

281.   Paragraph 281 states a conclusion of law to which no answer is required. To the extent that an answer is required, the allegations are denied.

**Fifteenth Claim for Relief**
**Deprivation of 13th Amendment Right to Be Free from Enslavement**

287.   Defendant re-allege and incorporate their answers to paragraphs 1-286 as if set forth separately herein.

289.   Paragraph 289 states a conclusion of law to which no answer is required. To the extent that an answer is required, the allegations are denied.

**Sixteenth Claim for Relief**
**Deprivation of Freedom of Expression**

295.   Defendant re-allege and incorporate their answers to paragraphs 1-294 as if set forth separately herein.

297.   Paragraph 297 states a conclusion of law to which no answer is required. To the extent that an answer is required, the allegations are denied.

**Seventeenth Claim for Relief**
**Deprivation of Privacy**

303.   Defendant re-allege and incorporate their answers to paragraphs 1-302 as if set forth separately herein.

ANSWER OF THE SOUTH CAROLINA SCHOOL OF COURT REPORTING, INC.
TO PLAINTIFFS' FIRST AMENDED COMPLAINT                    PAGE 9

305.  Paragraph 305 states a conclusion of law to which no answer is required. To the extent that an answer is required, the allegations are denied.

**Eighteenth Claim for Relief**
**RICO**

311.  Defendant re-allege and incorporate their answers to paragraphs 1 -310 as if set forth separately herein.

313.  Paragraph 313 states a conclusion of law to which no answer is required. To the extent that an answer is required, the allegations are denied.

**Nineteenth Claim for Relief**
**RICO Conspiracy**

322.  Defendant re-allege and incorporate their answers to paragraphs 1 -322 if set forth separately herein.

324.   Paragraph 324 states a conclusion of law to which no answer is required. To the extent that an answer is required, the allegations are denied.

**Twentieth Claim for Relief**
**RICO**

333.  Defendant re-allege and incorporate their answers to paragraphs 1-332 if set forth separately herein.

335.   Paragraph 335 states a conclusion of law to which no answer is required. To the extent that an answer is required, the allegations are denied.

**Twenty-First Claim for Relief**
**RICO**

343.  Defendant re-allege and incorporate their answers to paragraphs 1-342 as if set forth separately herein.

345.   Paragraph 345 states a conclusion of law to which no answer is required. To the extent that an answer is required, the allegations are denied.

**Twenty-Second Claim for Relief**
**Forced Labor**

353. Defendant re-allege and incorporate their answers to paragraphs 1-352 as if set forth separately herein.

**Twenty-Third Claim for Relief**
**Goods Sold and Delivered**

361. Defendant re-allege and incorporate their answers to paragraphs 1 -360 as if set forth separately herein.

**Twenty-Fourth Claim for Relief**
**Monies Had and Received**

365-368.   This Count relates to parties other than the Defendant to which no answer is required. To the extent that an answer is required the allegations are denied.

**Twenty-Fifth Claim for Relief**
**Monies Had and Received**

369-372.   This Count relates to parties other than the Defendant to which no answer is required. To the extent an answer is required the allegations are denied.

**Twenty-Sixth Claim for Relief**
**Monies Had and Received**

373. Defendant re-allege and incorporate their answers to paragraphs 1-343 as if set forth separately herein.

374- 376. This Count relates to parties other than the Defendant to which no answer is required. To the extent an answer is required the allegations are denied.

**Twenty-Seventh Claim for Relief**
**Legal Malpractice**

377-384.    This Count relates to parties other than the Defendant
to which no answer is required. To the extent an answer is required
the allegations are denied.

**Twenty-Eighth Claim for Relief**
**Unjust Enrichment**

385. Defendant re-allege and incorporate their answers to paragraphs
1-384 as if set forth separately herein.

**Twenty-Ninth Claim for Relief**
**Intentional Infliction of Emotional Distress**

389. Defendant re-allege and incorporate their answers to paragraphs
1-388 as if set forth separately herein.

**Thirtieth Claim for Relief**
**Breach of Fiduciary Duty**

393. Defendant re-allege and incorporate their answers to paragraphs
1-392 as if set forth separately herein.

395-401    This Count relates to parties other than the Defendant
to which no answer is required. To the extent that an answer is
required the allegations are denied.

**Thirty-First Claim for Relief**
**Fraud**

402. Defendant re-allege and incorporate their answers to paragraphs
1-401 as if set forth separately herein.

403-408    This Count relates to parties other than the Defendant
to which no answer is required. To the extent that an answer is
required the allegations are denied.

**Thirty-Second Claim for Relief**
**Breach of Fiduciary Duty**

409. Defendant re-allege and incorporate their answers to paragraphs
1-409 as if set forth separately herein.

410- 418. This Count relates to parties other than the Defendant to which no answer is required. To the extent that an answer is required the allegations are denied.

**Thirty-Third Claim for Relief**
**Conspiracy to Deprive Rights**

419.  Defendant re-allege and incorporate their answers to paragraphs 1 -418 as if set forth separately herein.

421.  Paragraph 421 states a conclusion of law to which no answer is required. To the extent that an answer is required, the allegations are denied.

**Thirty-Fourth Claim for Relief**
**Neglect to Prevent Conspiracy**

429. Defendant re-allege and incorporate their answers to paragraphs 1-418 as if set forth separately herein.

<u>**AFFIRMATIVE DEFENSES**</u>

**First Affirmative Defense**

This Court lacks personal jurisdiction over the Defendant The South Carolina School of Court Reporting. Such corporation was formed under the laws of the state of South Carolina on or after August 31, 2004. Attached hereto and incorporated herein as Exhibit "A" is a true and correct copy of an authenticated document certifying such fact.

**Second Affirmative Defense**

This Court lacks subject matter jurisdiction over the claims asserted under 42 U.S.C. § 1983 as the complaint does not allege cognizable state action upon which such claims must be based.

**Third Affirmative Defense**

The Plaintiffs' First Amended Complaint fails to state a claim upon which relief can be granted against this Defendant.

**Fourth Affirmative Defense**
The Complaint seeks to assert claims on behalf of the corporate plaintiff Courtroom Data Solutions, Inc. which is not represented by counsel admitted to practice law in the State of Texas or in the Federal District Court for the District of Texas. Accordingly those

claims can not proceed against the Defendant unless an appearance by counsel is filed on behalf the Plaintiff, Courtroom Data Solutions, Inc.

### Fifth Affirmative Defense

The Amended Complaint fails to plead its allegations of fraud with particularity as required by Fed. R. Civ. P. 9(b).

### Sixth Affirmative Defense

The Complaint fails to plead its allegation of special damages with particularity as required by Fed. R. Civ. P. 9(g).

### Seventh Affirmative Defense

The Amended Complaint fails to plead with particularity the required predicate acts necessary to set forth a claim under 18 U.S.C. §§ 1961 and 1962.

### Eighth Affirmative Defense

A. Based on information and belief, Hutchinson's real name at this time is Riyyahnah Tipharahyah Hawkins.

B. Attached hereto as Exhibit "B" and incorporated herein for all purposes, is a true and correct authenticated copy of the **PROVISIONAL APPLICATION FOR PATENT, the original of which was filed with the UNITED STATES PATENT AND TRADEMARK OFFICE**. Such application was filed by the Plaintiff Tsephanyah Y Hawkins. As is evidenced by such document, it appears that Hutchison is a **co-inventor** with reference to the computerized court reporter system that is the basis of the state court action and the computerized court reporter system complained herein by the Plaintiffs. Defendant believes and therefore alleges that any usage of such reporter system would have been with the express consent of Defendant Hutchison, who is a co-inventor of such system.

C. Based on information and belief, this Defendant believes that Hutchison has a right to have the computerized court reporter system, and market it and use it any way she wants.

WHEREFORE, having fully answered, said Defendant THE SOUTH CAROLINA

SCHOOL OF COURT REPORTING, INC., respectfully pray judgment of the

Court that the Plaintiffs claims against this Defendant be

dismissed, that Plaintiffs take nothing, that Defendant recover its

costs and reasonable attorneys' fees, and for such other and further

relief, general or special, at large or in equity, to which it may

be entitled.

The Defendant demands a jury trial on all counts.

RESPECTFULLY SUBMITTED,

Gary M. Brown, SBN 03123500
3041 South 7th, Abilene, Texas 79605
(325)673-9599; fax (325)673-5772
Attorney for Defendant
The South Carolina School of
Court Reporting, Inc.

CERTIFICATE OF SERVICE

This is to certify that on this the 23rd day of November, 2005, a true

and correct copy of the foregoing was served on all parties of record

by Certified Mail, Return Receipt Requested, or by Fax if number is

show, as addressed below:

Tsephanyah Y. Hawkins
3706 Private Road 2547
Clyde, Texas 79510

Yahehanan Y. Hawkins
3471 Private Road 2541
Clyde, Texas 79510

Tom C. Clark
3131 Turtle Creek Voulevard
Suite 1201
Dallas, Texas 75219
Fax 214.559.4466
Attorney for Whitten & Young, P.C.
Charles C. Self III, and
Donald L. Anderson

Hao Le
Assistant Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Fax 512.320.0667
Attorney for the
Honorable John W. Weeks

Stephen H. Suttle
Kerry DiGioia
400 Pine Street, Suite 800
Abilene, Texas 79604
Fax 325.676.8836
Attorneys for Marilyn Gardner,
John A. Chirtolini and The National
Institute of Realtime Reporters, Inc.

Claudia Hutchinson
P.O. Box 233
Little Mt., South Carolina 29075

Norman Oster
P.O. Box 417
Schnecksville, Pennsylvania 18078

Victoria L. Carter
Carter Law Offices
618 Hickory Street
Abilene, Texas 79601

S.A.W. Solutions, Inc.
1670 Briarwood Circle
Bethlehem, Pennsylvania 18015

Vocedit, Inc.
P.O. Box 233
Little Mt., South Carolina 29075

_____
Gary M. Brown

# The State of South Carolina

## *Office of Secretary of State Mark Hammond*

## Certificate of Existence

**I, Mark Hammond, Secretary of State of South Carolina Hereby certify that:**

SOUTH CAROLINA SCHOOL OF COURT REPORTING, INC. THE, a corporation duly organized under the laws of the State of South Carolina on August 31st, 2004, and having a perpetual duration unless otherwise indicated below, has as of the date hereof filed all reports due this office, paid all fees, taxes and penalties owed to the Secretary of State, that the Secretary of State has not mailed notice to the Corporation that it is subject to being dissolved by administrative action pursuant to section 33-14-210 of the South Carolina Code, and that the corporation has not filed articles of dissolution as of the date hereof.

Given under my Hand and the Great Seal of the State of South Carolina this 16th day of November, 2005.

*Mark Hammond*

Mark Hammond, Secretary of State



PA 1236529

# THE UNITED STATES OF AMERICA

## TO ALL TO WHOM THESE PRESENTS SHALL COME;

UNITED STATES DEPARTMENT OF COMMERCE

United States Patent and Trademark Office

November 04, 2004

THIS IS TO CERTIFY THAT ANNEXED HERETO IS A TRUE COPY FROM THE RECORDS OF THE UNITED STATES PATENT AND TRADEMARK OFFICE OF THOSE PAPERS OF THE BELOW IDENTIFIED PATENT APPLICATION THAT MET THE REQUIREMENTS TO BE GRANTED A FILING DATE UNDER 35 USC 111.

APPLICATION NUMBER: *60/051,623*
FILING DATE: *July 07, 1997*

By Authority of the
COMMISSIONER OF PATENTS AND TRADEMARKS

M. K. HAWKINS
Certifying Officer

Exhibit "B"

75-214   A/PRØ



07/07/97

Please type a plus sign (+) inside this box → [+]

PTO/SB/16 (3-97)
Approved for use through 1/31/98.   OMB 0651-0037
Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a
valid OMB control number.

# PROVISIONAL APPLICATION FOR PATENT COVER SHEET
This is a request for filing a PROVISIONAL APPLICATION FOR PATENT under 37 CFR 1.53 (b)(2).

| INVENTOR(S) | | |
|---|---|---|
| Given Name (first and middle [if any]) | Family Name or Surname | Residence (City and either State or Foreign Country) |
| Tsephanyah Yisrayl | Hawkins | Abilene, Texas |
| Riyyahnah Tipharahyah | Hawkins | Abilene, Texas |

☐ Additional inventors are being named on the ___ separately numbered sheets attached hereto

**TITLE OF THE INVENTION (280 characters max)**

## COMPUTERIZED VOICE WRITER COURT REPORTING SYSTEM

**CORRESPONDENCE ADDRESS**

Direct all correspondence to:

☐ Customer Number

Type Customer Number here

Place Customer Number
Bar Code Label here

OR

☑ Firm or Individual Name   Tsephanyah Hawkins

| Address | P.O. Box 839 |
|---|---|
| Address | |

| City | Abilene | State | Texas | ZIP | 79604 |
|---|---|---|---|---|---|
| Country | USA | Telephone | 915-893-4265 | Fax | |

**ENCLOSED APPLICATION PARTS** *(check all that apply)*

☑ Specification *Number of Pages* 28

☑ Small Entity Statement

☑ Drawing(s) *Number of Sheets* 15

☑ Other (specify) Certificate of mailing By Express Mail

**METHOD OF PAYMENT OF FILING FEES FOR THIS PROVISIONAL APPLICATION FOR PATENT** *(check one)*

☑ A check or money order is enclosed to cover the filing fees

☐ The Commissioner is hereby authorized to charge filing fees or credit any overpayment to Deposit Account Number:

FILING FEE AMOUNT ($)
75.00

The invention was made by an agency of the United States Government or under a contract with an agency of the United States Government.
☑ No.
☐ Yes, the name of the U.S. Government agency and the Government contract number are:_____

Respectfully submitted,

SIGNATURE  *Tsephanyah Yisrayl Hawkins*   Date  7/7/97

TYPED or PRINTED NAME  *Tsephanyah Yisrayl Hawkins*   REGISTRATION NO. *(if appropriate)*

TELEPHONE  915-893-4265   Docket Number:

## USE ONLY FOR FILING A PROVISIONAL APPLICATION FOR PATENT

Burden Hour Statement: This form is estimated to take 0.2 hours to complete. Time will vary depending ...

Provisional Patent Application

for

## COMPUTERIZED VOICE WRITER COURT REPORTING SYSTEM

FIELD OF THE INVENTION

This invention relates to a court reporting system whereby the audio of a legal proceeding and the audio of the court reporter repeating what they hear and commenting on the occurrences of the proceeding are electronically recorded, indexed and retrieved for repeating back and transcription.

BACKGROUND OF THE INVENTION

Voice Writer Reporters are Court Reporters that repeat legal proceedings verbatim into a tape recorder. All events occurring in a proceeding, legal or otherwise are thereby stored for repeating, transcription, and future reference.

Voice writer court reporters commonly utilize a cassette recorder that typically has two tracks: a live track for recording the audio of the proceedings and a reporter track to record the voice of the court reporter repeating the

2

audio of the proceedings and the events of the proceedings as he or she hears them. The record is then transcribed from the cassette. Often the record is made on a cassette recorder operating at the unusual speed of 5/16 inch per second.

There are many significant disadvantages inherent in this system. Among them is the fact that cassette tapes, especially when the reporter is under the stress often associated with court reporting, don't always go into the recorder correctly. They often get stuck, they often get jammed, they often get mixed up, and they can get inadvertently erased.

Another significant disadvantage with the use of cassette tapes is the difficulty in repeating back questions. To repeat a question, the Voice Writer must rewind the cassette tape to the place where the question began. Finding that location is awkward because there is no controlled way to index questions other than the last question that is asked. Furthering the problem is the common practice of attorneys to strike questions.

Another significant disadvantage with the use of cassette tapes is the short length of the tape. Typically tapes will record for only 30 minutes before needing to be changed or flipped over. This need often arises during critical testimony and often the court reporter is unaware of the fact that the tape has

3

reached its end. The result is often a costly and irrecoverable loss of a portion of the record or an interruption in the proceedings.

Another disadvantage with the use of cassette tapes is the lack of a means to notify the reporter, when they are transcribing, of events occurring away from the live microphone or silent objections where an attorney simply raises his or her hand. Events and objections are usually repeated by the court reporter into the court reporter track of the cassette, however, reporters typically type from the live track of the cassette and they often miss such events and silent objections which can only be heard on the court reporter track of the cassette.

Other disadvantages include the need for a special cassette machine to play back the 5/16 inch per second tapes used by many courts.

Other disadvantages include the need to use a foot-pedal to backspace the tape when transcribing. The foot-pedal is both tiring and inefficient and has been known to cause injury because it often has to be pushed several thousand times a record.

Other disadvantages include the need for a specially modified transcriber so the reporter can switch between the courtroom track and the track containing the voice of the reporter. It is not only costly, but it also requires

4

that the reporter remove her hands from the keyboard in order to switch tracks; this causes both fatigue and inefficiency.

Other disadvantages include the tedium of transferring notes from paper to the final, transcribed record.

Other disadvantages include the low fidelity of cassette tapes, the lack of any means to take notes other than on paper, and the possibility of recording over the record after repeating a question.

There are many systems and inventions that attempt to solve the problems associated with court reporting, however, almost without exception these attempts solve the problems of court reporters that use the stenotype machine. This invention's primary object is to solve many problems associated with voice writer court reporting.

It is one object of the present invention to provide a system that does not use cassette tapes and does not have the problems of tapes not going into the recorder, tapes jamming, tapes getting mixed up, and tapes getting inadvertently erased.

It is one object of the present invention to provide a system that can speed up audio dubbed from 5/16 inch per second tapes played on a regular

5

cassette player into the system so they can be transcribed at a comfortable speed using the system.

It is one object of the present invention to provide a system that will simultaneously record two or more tracks of audio for 8 or more hours uninterrupted.

It is another object of the present invention to provide a system that will backspace the record with a simple and selectable keyboard key combination while the system runs on a computer that is also running the word processor and or voice typing system.

It is another object of the present invention to increase the efficiency of transferring case information and notes to the final, transcribed report by saving that information into a database of standard format so it can be imported into most word processor programs.

Yet another object of the present invention is to increase the efficiency of the repeating of questions by a means that indexes questions in reverse order of their being asked, adjusts their index relative to the last question asked, then plays back those questions corresponding to user input according to their count from the last question asked. So if an attorney asks to hear the last question again, the reporter can hit, in the preferred embodiment, the Function-1 key,

6

To hear the second to last question, the reporter would hit the Function-2 key etc…

Yet another object of the present invention is to provide a system that will prevent a stricken question from being inadvertently repeated back.

Yet another object of the present invention is to provide a system which will allow a voice writer to keep notes including hard to spell words and phrases with a method for moving rapidly to the record at the point of those notes.

Still another object of the present invention is to provide a system that will prevent a reporter from inadvertently erasing the record or a portion of the record.

Still another object of the present invention is to provide a system that will, upon user request, rapidly switch from track to track by simply using a selectable keyboard key combination that can be used on the same computer and at the same time as a word processor program.

Still another object of the present invention is to provide a system that allows the user to easily change the play speed for efficient comprehension.

7

Still another object of the present invention is to provide a system that notifies the reporter, while they are transcribing, of events such as objections and alerts.

Still another object of the present invention is to provide a system that can run on relatively inexpensive notebook computers, and a system that can run along with a word processor when the system is in the transcriber mode.

Still another object of the present invention is to provide a system that can use an ordinary keyboard and/or pointing device such as a mouse as its primary control input.

## SUMMARY

The foregoing objects have been achieved by this invention which is a court reporting system whereby the testimony of individuals and the voice of a court reporter repeating that testimony and describing events surrounding it are recorded and transcribed and, more particularly, a court reporting system for providing and transcribing an indexed, digital audio record under the control of a single court reporter comprising a computer loaded with software together having a keyboard and pointing device for court reporter control, and audio input of one or more tracks; a video display or other device for indicating operational modes, software status, input and output levels, event counts, and

8

record and machine status; an audio output of one or more tracks for reading back questions, verifying the record, and transcription; a system clock; a short-cut key selection means for allowing operation of the transcription program concurrently with a word processor program; an event indexing means allowing the indexing and playback of the record at categorized events including questions, objections and hard to spell words including names; means easing record capture and transcription including means to vary playback speed, a means to record 5/16 inch per second court tapes directly from a regular 1 ¼ inch per second cassette player into the system and play it back at a comfortable speed, and means to notify reporter of objections and alerts on the record while they are transcribing the record, means to vary transcription backspace and means to adjust the volume and record levels, means to rapidly repeat back questions, objections and other courtroom events, a means to strike questions from the index in order to maintain an accurate question order and eliminate the inadvertent reading back of stricken questions; means for reducing reporter paperwork including a graphical interface window into which the reporter can enter and retrieve case information, a notes window for maintaining and correcting hard to spell words and phrases and for quickly finding and playing back testimony on a noted subject, and automatic on-

9

record and off-record indexing; means for simplifying system usage including a means to indicate disk and record time remaining, a means for indicating record and playback audio levels, objection and question counts, and a means for automatically saving and retrieving system settings including volume levels, speed settings, backspace settings, filenames etc...; and a means to transfer data to other computers or storage devices for archiving, review, or transcription.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a perspective view of the preferred embodiment of the invention.

FIG. 2 is a table showing the event database linked to the live audio and the court reporter audio tracks.

FIG. 3 is a table showing the fields contained in the case information database

FIG. 4 is a drawing depicting a voice writer court reporting system according to the present invention in its preferred embodiment.

FIGS. 5-9 are the flow chart of the system in its reporting mode.

FIGS. 10-15 are the flow chart of the system in its transcribing mode.

10

## DETAILED DESCRIPTION OF THE INVENTION

The court reporting system of the present invention is depicted in Fig. 4. The heart of the system is a control and processing routine comprising of a program which directs the acquisition, conversion and storage of audio data, reporter input of events and commands, program information display and audio output through a series of steps and processes that direct and configure the hardware components of the embodiment.

In the preferred embodiment, depicted in Fig. 1 and 4, the central control and processing routine 209 resides on a notebook computer 304 and is interfaced via a Graphical User Interface operating system to the hardware components of the embodiment. As those skilled in the art will appreciate, the central control and processing routine 209 could instead utilize a non-Graphical User Interface operating system or reside on a microcontroller and interface directly with the hardware components of the invention sans operating system.

As Fig. 1 illustrates, the preferred embodiment includes a notebook computer 304 that includes the hardware components of the invention. These comprise storage media in the form of a hard drive 207 that, as those skilled in the art will appreciate, could instead be an optical disk drive, magnetic tape drive, or other device capable of storing digitized audio; an analog to

11

digital/digital to analog converter 205 designed to convert analog audio into

digital data at a sampling rate sufficient to produce adequate audio fidelity that,

in the preferred embodiment, resides in the notebook computer in the form of

a sound integrated circuit; a user interface that, in the preferred embodiment,

comprises of the notebook's keyboard 307, pointing device and video display

305 and could, as those skilled in the art will appreciate, also comprise a voice

recognition program for both system control and transcription; one or more

audio sources that, in the preferred embodiment, include a line-input 308 for

dubbing cassette tapes onto the system, a courtroom live microphone 302 a

reporter's microphone 303 and an amplifier, mixer or sound compressor; and

an audio output transducer that, in the preferred embodiment, consists of a set

of headphones 301.

Turning now to central control and processing routine 209 utilized by

the present invention. The central control and processing routine 209 operates

in one of two modes, therefore it is depicted by two logic flow charts. The

first, Figs. 5-9, is the flow chart of the central control and processing routine

209 in its reporting mode. The second, Figs. 10-15, is the flow chart of the

central control and processing routine 209 in its transcribing mode. Each step

12

of the central control and processing routine 209 will be discussed in detail:

first, the flow chart of Figs. 5-9.

The program begins in subroutine Load Program 41 where it transfers

from nonvolatile storage into the computer's operating memory. Depending

upon the embodiment of the invention, this may be the result of boot-up or

user input. It then proceeds to subroutine Initialize 42 where it initializes

variables, files and device drivers. It then begins two continuously running yet

independent instruction loops the first of which begins in subroutine Get

Status Info 43 which obtains information including the current filename, disk

time remaining, audio input and output levels, event counts, current track,

current notes, and file length data. The program then proceeds to subroutine

Display Info 44 which displays the information obtained by subroutine Get

Status Info 43 and proceeds back to subroutine Get Status Info 43 completing

the circuit of the first of two continuously running loops.

Subroutine Initialize 42 then proceeds to begin the second

continuously running yet independent loop that awaits user input and acts on it

then repeats the loop. This loop begins with subroutine Detect User Input 45

which awaits user input and passes that input to branch subroutines Event

Marker 46, Record 50, Play Question 54, Change Speed 59, Adjust Volume 62,

13

Change Track 64, Enter Note 67, Play Note 71, See Case Information 75, Correct Notes 78, Stop Recording 81, Strike Last Question 84, and Shut Down 86. Each of those branch subroutines branches to other subroutines depending upon user input. Those branch subroutines will now be discussed in detail.

If the user input is an event marker, subroutine Event Marker 46 causes the program to proceed to subroutine Determine Category of Event 47 that determines the category of the event marker by using a look up table to compare user input to pre-selected input values. Those values can be key presses, key-press combinations, pointer actions or other forms of user input depending upon the embodiment of the invention; the categories they represent can include questions, objections, alerts, spelling inputs, off-records, and on-records. After determining the category of the user input, the program then proceeds to subroutine Get Current Audio File Position 48 that determines the current audio file position. The program then moves to subroutine Store Event 49 that stores the event in the database depicted by Fig. 2 by placing the file position in the File Position field 402, and placing the event category in the Event Type field 403. The program then proceeds back to subroutine Detect User Input 45 where it awaits further user input.

14

If the user input is a request to record, subroutine Record **50** causes the program to proceed to subroutine Is System Already Recording **51** which determines if the system is already in the record mode. If the program is not in the record mode, the program proceeds to subroutine Go to End of Audio File **52** that moves the file pointer to the end of the file. This prevents accidental erasure of any portion of the record. The program then proceeds to subroutine Store On-Record Event And Record **53** that stores an on-record event in the database Fig. 2 by placing an On-Record event in the Event Type field **403**, the current audio file position in the File Position Field **402**, the time in the Extra Data field **407**, and the length of the time data in the Extra Data Length field **406**. It then places the Analog to Digital Converter **205** that, in the preferred embodiment is a sound card or chipset, into the input mode. The Analog to Digital Converter **205** then digitizes audio from the court live microphone **302** and the reporter microphone **303** and that data is placed onto the storage. The program then proceeds back to subroutine Detect User Input **45** where it awaits further user input.

If the user input is a request to play back a question, subroutine Play Back a Question **54** causes the program to proceed to subroutine Determine Question Number **55** which determines from user input how many questions

15

back the question is that the user wants played back. In the preferred

embodiment, the function keys on the notebook's keyboard 307 are used for

this purpose. F1 means play back the last question, F2 means play back the

second to last question etc.... As those skilled in the art will appreciate, other

inputs may be pre-selected for this purpose depending upon the embodiment

of the invention. The program then moves to subroutine Count Back From

Current 57 where it determines which row of the database depicted in Fig. 2

contains the question that is the requested number of questions back from the

current file position. It selects that row. The program then proceeds to

Retrieve Question Position 58 where it retrieves the file position of the

requested question from the File Position field 402 of the selected row. The

program then moves to subroutine Play Question 61 where it moves the file

pointer to that of the requested question and places the system in play mode.

The program then proceeds back to subroutine Detect User Input 45 where it

awaits further user input.

If subroutine Change Speed 59 determines that the user input is a

request to adjust the playback speed, the program proceeds to subroutine

Adjust Speed 60 where the sampling rate of the Digital to Analog Converter

16

205 is adjusted according to user input. The program then proceeds back to subroutine Detect User Input 45 where it awaits further user input.

If subroutine Adjust Volume 62 determines that the user input is a request to adjust volume, the program proceeds to subroutine 63 where the volume of the Digital to Analog Converter 205 is adjusted. The program then proceeds back to subroutine Detect User Input 45 where it awaits further user input.

If the subroutine Change Track 64 determines that the user input is a request to change the playback track, the program proceeds to subroutine Determine Track 65 where it determines which track to switch to.  The program then proceeds to subroutine Set Track 66 where it parses and disperses the proper data from the selected track to the Digital to Analog Converter 205. The program then proceeds back to subroutine Detect User Input 45 where it awaits further user input.

If subroutine Enter Note 67 determines that the user input is the input of a note, which can be a note, spelling word or phrase, the program moves to subroutine Get Note Position 68 where it determines the current audio file position.  The program then moves to subroutine Store Note 69 where it stores the note into the database depicted by Fig. 2 by placing the note into the Extra

17

Data field 407, the current file position into the File Position field 402, the note

data length in the Extra Data Length field 406, and placing a Spelling category

into the Event Type field 403. The result is depicted in the spelling row

example 413. The program then moves to subroutine Add Note To List 70

where it adds the note to a list for display to the user. The program then

proceeds back to subroutine Detect User Input 45 where it awaits further user

input.

If subroutine Play Note 71 determines that the user input is a request to

play back the record at the point of a note, the program moves to subroutine

Determine Note 72 where it determines which note in the database to play

back. In the preferred embodiment it does this by determining which note was

selected with the pointing device. The program then moves to subroutine

Retrieve Note 73 where it selects the appropriate row from the database

depicted in Fig. 2. The program then moves to subroutine Play Note 74 where

it moves the file pointer to the file position indicated by the File Position field

402 of the selected row and sets the system into the play mode. The program

then proceeds back to subroutine Detect User Input 45 where it awaits further

user input.

18

If subroutine See Case Information **75** determines that the user input is a request to see or modify case information, the program moves to subroutine Display Case Information **76** where the data stored in the Case Information Database depicted in Fig. 3 (which, in the preferred embodiment, is a standard database that can be imported into common word processing programs) is displayed. The program then waits for the user to request to close case information then proceeds to subroutine Close Case Information **77** where it stores any changes made to the information by the user into the Case Information Database Fig. 3. The program then proceeds back to subroutine Detect User Input **45** where it awaits further user input.

If subroutine Correct Notes **78** determines that the user input is a request to correct notes, it moves to subroutine Display notes **79** where the program displays the notes and allows corrections to be made to them. Upon user request, the program moves to subroutine Save Notes **80** where it stores the note corrections to the database adding the corrections to the original notes. The program then proceeds back to subroutine Detect User Input **45** where it awaits further user input.

If subroutine Stop Recording **81** determines that the user input is a request to stop recording, the program moves to subroutine Store Off-Record