# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF TEXAS

## ABILENE DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

DEC - 7 2005

CLERK, U.S. DISTRICT COURT
By _____
                Deputy

|  |  |  |
|---|---|---|
| TSEPHANYAH Y. HAWKINS, et al, | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | **CIVIL ACTION NO. 1:05-CV-184-C** |
| | § | |
| | § | |
| THE HONORABLE JOHN W. WEEKS, et al., | § | |
| | § | |
| *Defendants.* | § | |
| | § | |

PLAINTIFFS' BRIEF IN SUPPORT OF THEIR RESPONSE IN

OPPOSITION TO DEFENDANT THE HONORABLE

<u>JOHN W. WEEKS' FIRST AMENDED MOTION TO DISMISS</u>

Respectfully Submitted,
By: _____
Tsephanyah Y. Hawkins, Pro Se
3706 Private Road 2547
Clyde, Texas 79510
(Voice) 325-893-4790
(Fax) 325-893-1805

_____
Yahchanan Y. Hawkins, Pro Se
3471 Private Road 2541
Clyde, Texas 79510
(Voice) 325-893-5961

# TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................... 2

TABLE OF AUTHORITIES .............................................................................. 4

I. FACTUAL AND PROCEDURAL BACKGROUND ................................... 6

II. FACTS ........................................................................................................... 6

III. ARGUMENT AND AUTHORITIES........................................................... 7

1. Determination of judicial immunity is a two part test – if the act was non-judicial, or was done in a clear absence of all jurisdiction, the defendant judge is not immune. ....................... 7

A.  The challenged act was non-judicial: "McAlester Factors" show challenged act was not done in "judicial capacity"................................................................................ 7

I. Preliminary matters.................................................................................... 7

a. Judge Weeks' assertions ...................................................................... 7

II.  Applying the allegations to the McAlester Factors. ....................................... 7

a. Factor 1, signing of "Temporary Restraining Order and Order setting Hearing" is not a judicial action when not done within confines of an existing case. ............................. 7

b. Factor 2, no allegation supporting inference that act was performed in the judge's courtroom or a room adjunct to it. ....................................................................... 7

c. Factor 3, the challenged act did not center around a case that was pending before the court ............................................................................................................ 8

d. Factor 4, the challenged act did not arise out of a visit to the judge........................ 11

III.  Because four out of four of the McAlester factors are plainly unmet, Judge Weeks' challenged action was clearly not judicial in nature. ....................................... 11

B. The challenged act was done in a clear absence of all jurisdiction.................................. 12

    I.  What is a clear absence of all jurisdiction? ................................................................. 12

    II. *Stump's* example inquiry ............................................................................................ 13

        a. Overview of *Stump's* example inquiry.................................................................. 13

        b. Cognizance........................................................................................................... 13

        c. Presence of proper parties ................................................................................... 14

        d. Issue to be decided was within substance and effect, within issue ...................... 15

    III.  Applying Stump v. Sparkman to this case .................................................................. 15

        a. Overview of application of Stump v. Sparkman to this case. .................................. 15

        b. Statutory and case law requirement of filing a petition in the office of the clerk..... 16

        c. Statutory bar against jurisdiction to enslave ......................................................... 17

        d. Proper parties were not present............................................................................ 19

        e. No point in substance and effect, within the issue. ................................................ 21

        f. Judge Weeks clearly acted in a clear absence of all jurisdiction............................. 22

C. Judge Weeks' challenged action was not judicial in nature, and it was done in a clear

absence of all jurisdiction.  Judge Weeks is not immune from suit in this case. .................. 22

2. Even the moon has a dark side -- judicial immunity's necessary exception ...................... 22

3. Analysis used in consideration of motion to dismiss for failure to state a claim upon which

relief can be granted......................................................................................................... 23

IV. CONCLUSION................................................................................................................ 24

CERTIFICATE OF SERVICE ............................................................................................... 25

# TABLE OF AUTHORITIES

## CASES

*Billings v. Concordia Heritage Ass'n,*
960 S.W.2d 688, 690 (Tex. App. 1997).................................................................. 16

*Billings v. Concordia Heritage Ass'n,*
960 S.W.2d 688, 691 (Tex. App. 1997).................................................................. 17

*Billings v. Concordia Heritage Ass'n,*
960 S.W.2d 688, 691 (Tex. App. 1997).......................................................... 9, 10, 17

*Del Valle Independent Sch. Dist. v. Lopez,*
845 S.W.2d 808, 809 (Tex. 1992)........................................................................ 20

*Des Isles v. Evans,*
200 F.2d 614, 615-616 (5th Cir.-OLD 1952)......................................................... 24

*Ex parte Hughes,*
133 Tex. 505, 510 (Tex. 1939) ........................................................................... 16

*Global Natural Resources v. Bear, Stearns & Co.,*
642 S.W.2d 852, 854 (Tex. App. 1982).................................................................. 20

*Malina v. Gonzales,*
994 F.2d 1121, 1124 (5th Cir. 1993) .................................................................... 11

*Mireles v. Waco,*
502 U.S. 9, 11 (U.S. 1991)................................................................................. 22

*Mireles v. Waco,*
502 U.S. 9, 12 (U.S. 1991)................................................................................. 22

*Plant Process Equip., Inc. v. Harris,*
579 S.W.2d 53, 54 (Tex. App. 1979).................................................................... 20

*Reynolds v. Stockton,*
140 U.S. 254, 268 (U.S. 1891)............................................................................ 12

*Sparks v. Duval County Ranch Co.,*
604 F.2d 976, 980 (5th cir, 1979) ....................................................................... 23

*Stanaland v. Atlantic C. L. R. Co.,*
192 F.2d 432, 433 (5th Cir.-OLD 1951)................................................................ 23

*Stanaland v. Atlantic C. L. R. Co.,*
192 F.2d 432, 434 (5th Cir.-OLD 1951) ..................................................................................... 24

*Stump v. Sparkman,*
435 U.S. 349, 356 (U.S. 1978)............................................................................................... 12, 13

*Stump v. Sparkman,*
435 U.S. 349, 357 (U.S. 1978)................................................................................................... 14

*Stump v. Sparkman,*
435 U.S. 349, 358 (U.S. 1978)............................................................................................... 14, 18

**STATUTES**

18 U.S.C.S. § 1589............................................................................................................................ 19

*Texas Rule of Civil Procedure* 22 ..................................................................................... 10, 17

## I. FACTUAL AND PROCEDURAL BACKGROUND

On October 7, 2005 Plaintiffs, hereinafter ("Respondents") filed "Plaintiffs' Original Complaint". In response, on November 11, 2005, Defendant The Honorable John W. Weeks ("Judge Weeks") filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) based on judicial immunity. On October 18, 2005, Plaintiffs' First Amended Complaint was filed. On November 8, 2005 Judge Weeks filed his "Defendant The Honorable John W. Weeks' First Amended Motion to Dismiss" ("Motion to Dismiss"). Judge Weeks has filed no answer in this case. His Motion to Dismiss has no attached affidavits or any "Facts" section. Respondents herein argue their opposition to that Motion to Dismiss.

## II. FACTS

As alleged in Plaintiffs' First Amended Complaint, the claims against Judge Weeks are based upon his October 10, 2003 signing of Defendant Claudia Hutchison's ("Hutchison") "Temporary Restraining Order and Order Setting Hearing" ("Challenged Order") on October 10, 2003, a copy of which is attached to Plaintiffs' First Amended Complaint as Exhibit "B".

As alleged in Plaintiffs' First Amended Complaint, the Challenged Order was signed in response to the submission to Judge Weeks of Hutchison's "Plaintiff's Original Petition", a copy which is attached to Plaintiffs' First Amended Complaint as Exhibit "A".

As alleged in Plaintiffs' First Amended Complaint, the Challenged Order was signed before the filing of Hutchison's "Plaintiff's Original Petition" with the clerk of a court, before any filings in the eventual state case, before there was a state case involving Hawkins. There was no advanced notice given to Hawkins regarding Hutchison's "Plaintiff's Original Petition" or the Challenged Order, and Hawkins was uninvited to any hearing that may have been held on the Challenged Order prior to its signing. He was first made aware of the state suit and the

6

Challenged Order when it was served on him, already signed by Judge Weeks, on October 10, 2003 at about 6:00 p.m. on Friday evening.

## III. ARGUMENT AND AUTHORITIES

**1. Determination of judicial immunity is a two part test – if the act was non-judicial, or was done in a clear absence of all jurisdiction, the defendant judge is not immune.**

**A. The challenged act was non-judicial: "McAlester Factors" show challenged act was not done in "judicial capacity".**

**I. Preliminary matters.**

> **a. Judge Weeks' assertions**

The top paragraph of page four of Defendant The Honorable John W. Weeks' First Amended Motion to Dismiss contains Judge Weeks' conclusory, imprecise, and baseless assertion that:

> "[i]t is without question that Judge Weeks acted within the scope of his judicial capacity, as articulated by the following four factors: 1) whether the precise act complained of is a normal judicial function; 2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; 3) whether the controversy centered around a case pending before the court; and 4) whether the acts arose directly out of a visit to the judge in his official capacity. *Ballard*, 413 F.3d at 515"

**II. Applying the allegations to the McAlester Factors.**

> **a. Factor 1, signing of "Temporary Restraining Order and Order setting Hearing" is not a judicial action when not done within confines of an existing case.**

Because at the time Judge Weeks signed the Challenged Order there was no case, the precise act complained of was not a normal judicial function.

> **b. Factor 2, no allegation supporting inference that act was performed in the judge's courtroom or a room adjunct to it.**

The only mention that Judge Weeks performed the challenged act in his courtroom is in his "Argument and Authority" section of his motion. Plaintiffs' First Amended Complaint does not allege that the Challenged Order was signed in Judge Weeks' courtroom. In fact, it is unlikely that Judge Weeks performed his challenged action in his courtroom in The 42nd Judicial District of Callahan County (the county wherein Plaintiff Tsephanyah Hawkins resided and resides, and Defendant Claudia Hutchison resided at the time), because, while the order was signed at 8:45 a.m., it was filed almost five hours later. The significance of that fact is realized when viewed in light of the fact that Judge Weeks normally visits the 42nd Judicial District of Callahan County every other Thursday. The Challenged Order was signed on a Friday. But because it is alluded to in Judge Weeks' motion to dismiss that he signed the order in his courtroom, Movant would like the opportunity to amend his First Amended Complaint to include the allegation that upon information and belief, the Challenged Order was not signed in the 42nd District Court of Callahan County courtroom or its adjunct spaces, and that discovery will produce evidence in support of that.

### c. Factor 3, the challenged act did not center around a case that was pending before the court

Judge Weeks inaccurately and imprecisely asserts that "[i]t is undisputed that Plaintiffs' various claims against Judge Weeks are in connection with his handling of the state lawsuit over which he presided." *Defendant The Honorable John W. Weeks' First Amended Motion To Dismiss,* pp. 3, last paragraph. The inaccurate, imprecise, and baseless assertion is repeated in the first full paragraph on page four of his motion. In making that inaccurate, imprecise, and baseless assertion, Judge Weeks cites Plaintiffs' First Amended Complaint, pp. 5-6 ¶ 10. That paragraph plainly contains no mention of Judge Weeks' handling of a state lawsuit:

"On information and belief, Defendant The Honorable John W. Weeks, hereinafter referred to as "Weeks" is an individual who presently resides in Abilene, Texas. He is employed as a State of Texas District Court Judge, and has been during all relevant events. Along with other actions that caused damage and/or injury to plaintiffs, Weeks violated Plaintiffs' civil rights by actions he took under color of state law, and thereby deprived Plaintiffs of rights, privileges or immunities guaranteed by the Constitution or laws of the United States, thereby causing damage and/or injury to Plaintiffs. He is sued personally. At all relevant times he was acting as a State of Texas District Court Judge."

*Plaintiffs' First Amended Complaint*, pp. 5-6 ¶ 10

A civil suit in Texas does not commence until a petition is filed in the office of the clerk:

"A civil suit in the district or county court shall be commenced by a petition filed in the office of the clerk." *Texas Rule of Civil Procedure 22.*

"In Texas an action is commenced in the district or county court by filing a petition in the office of the clerk."

*Billings v. Concordia Heritage Ass'n,* 960 S.W.2d 688, 691 (Tex. App. 1997)

Plaintiffs' First Amended Complaint plainly and accurately alleges that at the time of

Judge Weeks' challenged action, there was no relevant state law suit:

On October 10, 2003 at 8:45 a.m., upon the request of Hutchison, Weeks as State of Texas District Court Judge knowingly and willfully and under color of law signed the order labeled "TEMPORARY RESTRAINING ORDER AND ORDER SETTING HEARING". (a copy attached herein and incorporated by reference as Exhibit "B" and hereinafter referred to as "The Order Signed On 10-10-2003"). That fact is plain from the face of The Order Signed On 10-10-2003, where on its last page, above Weeks' signature it states "SIGNED on Oct 10, 2003 at 8:45

*Plaintiffs' First Amended Complaint*, pp. 20 ¶ 44.

"On 10-10-2003, at 1:40 pm, Hutchison filed The Order Signed On 10-10-2003 together with a document entitled Plaintiff's Original Petition with the Callahan County 42nd Judicial District Court Clerk. It received the cause number 18,093. That case is hereinafter referred to as the "State Case"."

*Plaintiffs' First Amended Complaint*, pp. 21 ¶ 67.

9

"[t]hose were the first filings in the State Case. Thus [Defendant The Honorable John W. Weeks] signed the [Temporary Restraining Order and Order Setting Hearing] almost five hours before there was any paper filed in the State Case – before there was the State Case, before there was any case involving [Plaintiff Courtroom Data Solutions, Inc.] and/or [Plaintiff Tsephanyah Hawkins]."

*Plaintiffs' First Amended Complaint*, pp. 21 ¶ 68.

Because the challenged action occurred before the filing of the original petition with the clerk of the court, there can be no relevant "connection" between the challenged action and any handling of a state lawsuit by Judge Weeks over which he may have presided.

"We note that the handwritten court order, signed on Friday, August 27, 1995, was issued by the Honorable Sam Paxson of the 210th District Court prior to the commencement of any proceedings in a court of competent jurisdiction. The record does not show at whose direction this court order was sought or who effected service of the order. In Texas an action is commenced in the district or county court by filing a petition in the office of the clerk. TEX.R.CIV.P. 22. *See V. D. Anderson Co. v. Young,* 128 Tex. 631, 101 S.W.2d 798 (Tex. 1937); *Russell v. Taylor,* 121 Tex. 450, 49 S.W.2d 733; (Tex. 1932); *Cleveland v. Ward,* 116 Tex. 1, 285 S.W. 1063 (Tex. 1926). Judicial action without jurisdiction is void. *Cleveland,* 285 S.W. at 1071. When Plaintiff's Original Petition for Injunction and for Declaratory Judgment was filed at 8:47 a.m. on August 28, 1997, the jurisdiction of the 205th District Court of El Paso County Texas for the first time attached. Only then, did the court acquire the power to determine all essential questions, and to do any and all things with reference thereto authorized by the constitution and statutes. *See Cleveland,* 285 S.W. at 1069."

*Billings v. Concordia Heritage Ass'n,* 960 S.W.2d 688, 691

(Tex. App. 1997)

Factor "3", "whether the controversy centered around a case pending before the court," is plainly unmet. It is properly alleged in Plaintiffs' First Amended Complaint, and it is indisputable that there was no case at the time of the challenged action, therefore, in consideration of Judge Weeks' motion to dismiss, there was no relevant case "pending before the court".

### d. Factor 4, the challenged act did not arise out of a visit to the judge

Factor "4", whether the acts arose directly out of a visit to the judge in his official capacity, is unmet. Plaintiffs' First Amended Complaint alleges no such visits. Nor are there any allegations that would reasonably allow any inference that the Challenged Order arose out of a visit to Judge Weeks by Tsephanyah Hawkins. There are no allegations by Hawkins or Judge Weeks that the Challenged Order arose out of a visit to Judge Weeks by anyone. There are no allegations that would support the inference of any such visit. Moreover, even if there was a visit to the judge by Hutchison, a visit to a judge by a third person stranger-to-any-relevant-case-pending-before-the-court clearly does not meet the rationally construed requirements of factor "4". In this case, as alleged in Plaintiffs' First Amended Complaint, the challenged act arose out of a request by a third party, stranger-to-any-relevant-case-pending before Judge Weeks. Even if that request involved a visit to the judge in his official capacity (no allegation supports such a visit), because the visitor was a stranger to any relevant case pending before the judge, and because the visitor is a third person, the visit cannot meet a rationally construed factor "4". So factor "4" is clearly unmet.

## III. Because four out of four of the McAlester factors are plainly unmet, Judge Weeks' challenged action was clearly not judicial in nature.

As the above analysis reveals, contrary to Judge Weeks' assertion, it is not without question that he acted within the scope of his judicial capacity as determined by the four factors he enumerates. Only "[i]n **some** situations, immunity is to be afforded even though one or more of the McAlester factors is not met." *Malina v. Gonzales*, 994 F.2d 1121, 1124 (5th Cir. 1993) (emphasis added). In this case, none of the "McAlester factors" are met. There was no judicial function as required by Factor "1". There is no allegation that the challenged act occurred in

Judge Weeks' courtroom or any adjunct spaces, therefore factor "2" is unmet. Factor "3",

whether the controversy centered around a case pending before the court, is unmet as a matter of

law. There was no case. There is no visit to the judge as required by factor "4". There are no

allegations supporting the finding of such a visit. Therefore, it is clearly not "without question"

that the challenged action was within the scope of Judge Weeks' judicial capacity. As his

proposed analysis[1] demonstrates, Judge Weeks' challenged act was plainly not judicial in nature.

**B. The challenged act was done in a clear absence of all jurisdiction.**

**I.  What is a clear absence of all jurisdiction?**

The courts have long held that "the necessary inquiry in determining whether a defendant

judge is immune from suit is whether <u>at the time he took the challenged action he had

jurisdiction over the subject matter before him</u>." *Stump v. Sparkman*, 435 U.S. 349, 356 (U.S.

1978) (emphasis added).

"Jurisdiction may be defined to be the right to adjudicate concerning the subject-matter

in the given case. To constitute this there are three <u>essentials</u>: First, the court must have

cognizance of the class of cases to which the one to be adjudged belongs; second, the proper

parties must be present; and third, the point decided must be, in substance and effect, within the

issue." *Reynolds v. Stockton*, 140 U.S. 254, 268 (U.S. 1891).  (Emphasis added)

An application of *Reynolds* to *Stump* yields the following: The necessary inquiry in

determining whether a defendant judge is immune from suit is whether at the time he took the

challenged action he had each of these three essentials concerning the subject matter before him:

(1) Cognizance of the subject matter before him; (2) The presence of the proper parties; (3) The

point decided is in substance and effect, within the issue.

When a judge acts in a clear absence of all jurisdiction, he is not immune:

---

[1] The McAlester factors

"Because "some of the most difficult and embarrassing questions which a judicial officer is called upon to consider and determine relate to his jurisdiction...," _Bradley, supra, at 352,_ the scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge. A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the "clear absence of all jurisdiction." n7 13 Wall., at 351.

_Stump v. Sparkman,_ 435 U.S. 349, 356 (U.S. 1978)

## II. _Stump's_ example inquiry

### a. Overview of _Stump's_ example inquiry.

Stump v. Sparkman is largely composed of an exemplary tri-partite inquiry of its underlying matter to determine whether all three requisites of jurisdiction over the subject matter before the defendant judge as enumerated in _Reynolds_ were present at the time he took his challenged action. The inquiry is taken from the perspective of forum state statutory and case law.

The court precedes it tri-partite inquiry with the statement that it "[c]annot agree that there was a "clear absence of all jurisdiction" in the DeKalb County Circuit Court to consider the petition presented by Mrs. McFarlin." The court then demonstrates the presence of each and every essential element of jurisdiction over the subject matter before the defendant judge by a recitation of the pertinent facts and law of the underlying case. It proves that at the time of the challenged action, the defendant judge had jurisdiction over the subject matter before him.

### b. Cognizance

The court begins its tri-partite analysis by demonstrating that the defendant judge had cognizance over the class of cases or actions to which the challenged action belongs:

"As an Indiana Circuit Court Judge, Judge Stump had "original exclusive jurisdiction in all cases at law and in equity whatsoever ...;" jurisdiction over the

settlement of estates and over guardianships, appellate jurisdiction as conferred by law, and jurisdiction over "all other causes, matters and proceedings where exclusive jurisdiction thereof is not conferred by law upon some other court, board or officer." Ind. Code § 33-4-4-3 (1975)."

*Stump v. Sparkman,* 435 U.S. 349, 357 (U.S. 1978)

In addressing the argument that, other than the authorization to sterilize institutionalized individuals under certain circumstances, the Indiana Code "contained no express authority for judicial approval of tubal ligations", the Supreme Court replies "it is more significant that there was no Indiana statute and no case law in 1971 prohibiting a circuit court, a court of general jurisdiction, from considering a petition of the type presented to Judge Stump." *Stump v. Sparkman,* 435 U.S. 349, 358 (U.S. 1978). The implication is significant and clear; if there were case law or a statute prohibiting a circuit court, a court of general jurisdiction, from considering a petition of the type presented to Judge Stump, Stump would have been acting in a clear absence of all jurisdiction. But there was no such case law or statute.

Thus was shown the presence of cognizance of the class of actions to which the matter before the defendant judge in *Stump* belonged. The first of three essentials for Stump was plainly present.

### c. Presence of proper parties

The court then proceeds to demonstrate that the proper parties were present at the time of the challenged action:

> "The statutory authority for the sterilization of institutionalized persons in the custody of the State does not warrant the inference that a court of general jurisdiction has no power to act on a petition for sterilization of a minor in the custody of her parents, particularly where the parents have authority under the Indiana statutes to "consent to and contract for medical or hospital care or treatment of [the minor] including surgery." Ind. Code § 16-8-4-2 (1973)."
>
> *Stump v. Sparkman,* 435 U.S. 349, 358 (U.S. 1978).

Since parents have authority under Indiana statutes to consent to and contract for medical or hospital care or treatment of the minor including surgery, the only party whose presence was necessary for jurisdiction over the subject matter of the petition was the parent. Arguably the parent in *Stump* did not need the court's permission at all to have the sterilization performed. As harsh as it might seem, the parent's petition to have surgery done on their minor child in Indiana has about as many jurisdictional requisites as a petition to change an adult petitioner's name. There was no requirement of notice to the minor. All necessary parties were present – the parent.

### d. Issue to be decided was within substance and effect, within issue

With the presentation of two of the three essential elements, it remained only for the court in Stump to show that when that defendant judge performed his challenge act, the issue to be decided was within substance and effect, within the issue. Since the lower court had cognizance, and the proper party was the parent, the parent was present, and the parent was the only party required, and the parent presented the petition, the issue was within substance and effect. Hence, all three elements of jurisdiction over the subject matter before the Stump's judge were present. Stump was immune.

## III. Applying Stump v. Sparkman to this case

### a. Overview of application of Stump v. Sparkman to this case.

An analysis of whether Defendant John W. Weeks had jurisdiction over the subject matter of the matter before him at the time of his challenged action reveals that the facts of the instant case are the antithesis of the facts of *Stump*. For while the defendant judge in *Stump* had all three essential elements of jurisdiction over the subject matter before him, Judge Weeks clearly lacked each and all of the requisite three.

**b. Statutory and case law requirement of filing a petition in the office of the clerk.**

Because the challenged action took place before the commencement of the case, Judge Weeks was clearly absent all jurisdiction.

"A civil suit in the district or county court shall be commenced by a petition filed in the office of the clerk." *Texas Rule of Civil Procedure* 22. "In Texas an action is commenced in the district or county court by filing a petition in the office of the clerk. Judicial action without jurisdiction is void." *Billings v. Concordia Heritage Ass'n,* 960 S.W.2d 688, 690 (Tex. App. 1997). "An injunction is a remedial writ which courts issue for the purpose of enforcing their equity jurisdiction. 32 C.J., p. 19. In such cases jurisdiction must exist before the writ can issue. In England chancery courts exercise nonjudicial, as well as judicial, powers; but our equity courts possess only judicial powers. *Allred v. Beggs,* 125 Texas 584, 84 S.W. (2d) 223." *Ex parte Hughes,* 133 Tex. 505, 510 (Tex. 1939).

"We note that the handwritten court order, signed on Friday, August 27, 1995, was issued by the Honorable Sam Paxson of the 210th District Court prior to the commencement of any proceedings in a court of competent jurisdiction. The record does not show at whose direction this court order was sought or who effected service of the order. In Texas an action is commenced in the district or county court by filing a petition in the office of the clerk. TEX.R.CIV.P. 22. *See V. D. Anderson Co. v. Young,* 128 Tex. 631, 101 S.W.2d 798 (Tex. 1937); *Russell v. Taylor,* 121 Tex. 450, 49 S.W.2d 733; (Tex. 1932); *Cleveland v. Ward,* 116 Tex. 1, 285 S.W. 1063 (Tex. 1926). Judicial action without jurisdiction is void. *Cleveland,* 285 S.W. at 1071. **When Plaintiff's Original Petition for Injunction and for Declaratory Judgment was filed at 8:47 a.m. on August 28, 1997, the jurisdiction of the 205th District Court of El Paso County Texas for the first time attached. Only then, did the court acquire the power to**

**determine all essential questions, and to do any and all things with reference thereto authorized by the constitution and statutes**. *See Cleveland,* 285 S.W. at 1069." *Billings v. Concordia Heritage Ass'n,* 960 S.W.2d 688, 691 (Tex. App. 1997) (Emphasis added)

It is clear from Texas statues and long settled by Texas case law that when, as alleged in Plaintiffs' First Amended Complaint, Hutchison filed her "Plaintiff's Original Petition" at 1:40 p.m., on October 10, 2003, that is the earliest that jurisdiction of the 42nd District Court of Callahan County could have first attached in that case.   "Only then, did the court acquire the power to determine all essential questions, and to do any and all things with reference thereto authorized by the constitution and statutes. See *Cleveland,* 285 S.W. at 1069." *Billings v. Concordia Heritage Ass'n,* 960 S.W.2d 688, 691 (Tex. App. 1997)

In the instant case, the time Judge Weeks took his challenged action is undisputable and it is easily ascertained as alleged in Plaintiff's First Amended Complaint as October 10, 2003 at 8:45 a.m.  That time was clearly prior to the commencement of any proceedings in a court of competent jurisdiction.  That time was therefore clearly prior to his acquisition of any jurisdiction in the case that commenced no earlier than the time of Hutchison's later filing of her "Plaintiff's Original Petition".

And while a judge may obtain jurisdiction to act at the point of the filing of a petition with the clerk of a state court, that is not the only jurisdictional requirement in Texas.  By the filing of a petition with the clerk of the court, he only obtains "the power to determine all essential questions, and to do any and all things with reference thereto underlined by the constitution and statutes." *See Cleveland,* 285 S.W. at 1069." *Billings v. Concordia Heritage Ass'n,* 960 S.W.2d 688, 691 (Tex. App. 1997)

**c. Statutory bar against jurisdiction to enslave**

Like the defendant judge in *Stump*, Judge Weeks is a state judge of general jurisdiction. However, the two are distinguished by that fact that while "there was no Indiana statute and no case law in 1971 prohibiting a circuit court, a court of general jurisdiction, from considering a petition of the type presented to Judge Stump." *Stump v. Sparkman*, 435 U.S. 349, 358 (U.S. 1978), Judge Weeks' action was clearly barred by the Thirteenth Amendment of the United States Constitution. It was also barred by 18 U.S.C.S. § 1589. 18 U.S.C.S. § 1589 is particularly pertinent because by its very language prohibiting certain abuses or threatened abuses of the law or the legal process, it is a jurisdictional bar to the challenged action of Judge Weeks.

18 U.S.C.S. § 1589 states:

> Whoever knowingly provides or obtains the labor or services of a person--
> (1) by threats of serious harm to, or physical restraint against, that person or another person;
> (2) by means of any scheme, plan, or pattern intended to cause the person to believe that, if the person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint; or
> (3) by means of the abuse or threatened abuse of law or the legal process,
>
> shall be fined under this title or imprisoned not more than 20 years, or both. If death results from the violation of this section, or if the violation includes kidnapping or an attempt to kidnap, aggravated sexual abuse or the attempt to commit aggravated sexual abuse, or an attempt to kill, the defendant shall be fined under this title or imprisoned for any term of years or life, or both.

As alleged in Plaintiff's First Amended Complaint, by his challenged action of October 10, 2003, Judge Weeks, without hearing, or notice, or an invitation to appear, enjoined Hawkins before the existence of a relevant case from "not fulfilling current obligations or commitments to customers, specifically, but not limited to the New England School of Court Reporting;" at the same time, the order prevented Hawkins from "interfering with the duties that [Defendant Claudia Hutchison] has been involved with performing for [Courtroom Data Solutions, Inc.], which include, but are not limited to the following: (a) providing emergency services for the

18

court reporters in the courtroom (b) answering phones for [Courtroom Data Solutions, Inc.] (c) providing technical support for [Courtroom Data Solutions, Inc.] to the existing customers (d) taking in the money for [Courtroom Data Solutions, Inc.] and paying the regular bills (e) marketing the products (f) assisting instructors across the country (g) hiring and firing employees" *Plaintiff's First Amended Complaint, Exhibit "B" Temporary Restraining Order and Order Setting Hearing.*

Not only did the Challenged Order force Hawkins to work against his will, it ordered Hawkins to fulfill obligations that Hutchison was free to create.   This is clearly the type of abuse or threatened abuse of the law or legal process prohibited by the language of 18 U.S.C.S. § 1589. It is clearly a violation of the Thirteenth Amendment of the United States Constitution.   The Thirteenth Amendment of the United States Constitution and 18 U.S.C.S. § 1589 act therefore as clear jurisdictional bars against a judge, even a judge of general jurisdiction such as Judge Weeks, from considering a petition for an order of the nature and character of the Challenged Order. Because of that, at the time he took his challenged action, Judge Weeks was acting in a clear absence of all jurisdiction.   He is, therefore, not immune from suit for the damages caused by that action.

**d. Proper parties were not present.**

As alleged by Plaintiffs' First Amended Complaint, at the time Judge Weeks signed the Challenged Order, neither the order, nor the petition for it had been filed in the state court.   In fact, there was no state case at the time Judge Weeks signed the Challenged Order. At the time Judge Weeks signed the Challenged Order, that order was not associated with any case in any court.   Because there was no case, there were no parties.   There was neither notice to Hawkins nor notice to Courtroom Data Solutions, Inc..   There was no appearance by Hawkins or

Courtroom Data Solutions, Inc. There was nothing to appear to. There were no attempts to serve Hawkins or Courtroom Data Solutions, Inc. prior to the signing of the Challenged Order. There was no indication in Hutchison's "Plaintiffs' Original Petition" that Hawkins was unavailable for service, and there was no indication of any actual emergency. Furthermore, it is plain from Hutchison's "Plaintiffs' Original Petition" and from the facts alleged in Plaintiffs' First Amended Complaint that her petition presents a prima facie case that the subject matter of the Challenged Order was owned by, and in the possession of, Hawkins.

Moreover, while the Challenged Order is entitled "Temporary Restraining Order and Order Setting Hearing", it is clearly not a temporary restraining order. "We reject the notion that such matters of form control the nature of the order itself, it is the character and function of an order that determine its classification." *Del Valle Independent Sch. Dist. v. Lopez*, 845 S.W.2d 808, 809 (Tex. 1992). See also *Plant Process Equip., Inc. v. Harris*, 579 S.W.2d 53, 54 (Tex. App. 1979) ("The controlling factor is...whether the relief granted does more than preserve the status quo during the ten day span of a temporary restraining order.") , And see also *Global Natural Resources v. Bear, Stearns & Co.*, 642 S.W.2d 852, 854 (Tex. App. 1982)  ("The temporary restraining order [is] tantamount to a temporary injunction because the effect of it on the parties went beyond protecting the status quo for a ten-day period.").

The Challenged Order, as alleged in Plaintiffs' First Amended Complaint clearly did far more than preserve the status quo during a ten day span. As alleged in Plaintiffs' First Amended Complaint, it enjoined Plaintiff Tsephanyah Hawkins from "[n]ot fulfilling current obligations or commitments to customers, specifically, but not limited to the New England School of Court Reporting" *Plaintiffs' First Amended Complaint*, page 21 ¶ 70. It enjoined Plaintiff Tsephanyah Hawkins from "Selling, transferring, assigning, mortgaging, encumbering, or in any other

manner alienating any of the property of either party, whether personalty or realty, except as specifically authorized by order of this Court" and from "Making withdrawals from any checking or savings account in any financial institution for any purpose, until a hearing on the restraining order, unless necessary for utilities or taxes" *Plaintiffs' First Amended Complaint*, page 22 ¶ 71.

There were other similar clauses in the Challenged Order including those alleged and quoted in Plaintiffs' First Amended Complaint, and the Challenged Order attached thereto as Exhibit "B". Under the Texas Rules of Civil Procedure, The Challenged Order could not be signed without the commencement of a case, a case, and parties, and, as alleged in Plaintiff's First Amended Complaint, the Challenged Order was clearly not a temporary restraining order, so it could not be signed unless proper notice had been afforded the parties.

In light of the foregoing, it is clear that Judge Weeks acted without the presence of the proper parties. He therefore acted in a clear absence of all jurisdiction when he signed the Challenged Order. He is therefore not immune from suit for the damages caused by that action.

### e. No point in substance and effect, within the issue.

Because there was no case associated with the Challenged Order or Hutchison's "Plaintiffs' Original Petition" at the time Judge Weeks signed the Challenged Order, and no paper connected to the Challenged Order had been filed in any court, and no parties had been served, and there were no parties because there was not a case, and because the proper parties were not present, there could be no point in substance and effect, within the issue, and there was none. Those affected by the Challenged Order were complete strangers to, unaware of, and uninvited to, any proceeding, procedure, conference, huddle, or whatever, surrounding its signing and issuance. There was no case pending before the court to which the challenged action

was connected. Judge Weeks, simply stated, granted a private prayer by Hutchison to use his color of authority as a state judge to take Hawkins' property, liberty, and labor, and give it to her. Because of those things, at the time he took the challenged action, Judge Weeks was acting in a clear absence of all jurisdiction at the time of his challenged action. He is therefore not immune from suit for the damages caused by that action.

**f. Judge Weeks clearly acted in a clear absence of all jurisdiction.**

When Judge Weeks took his challenged action, he clearly lacked each and every one of the three essentials of jurisdiction over the subject matter before him. He acted in a clear absence of all jurisdiction.

**C. Judge Weeks' challenged action was not judicial in nature, and it was done in a clear absence of all jurisdiction. Judge Weeks is not immune from suit in this case.**

Because Judge Weeks' challenged action was not judicial in nature, Judge Weeks' is not immune from a suit for damages. "[A] judge is not immune from liability for nonjudicial actions, i. e., actions not taken in the judge's judicial capacity. *Forrester v. White,* 484 U.S. at 227-229; *Stump v. Sparkman,* 435 U.S. at 360." *Mireles v. Waco,* 502 U.S. 9, 11 (U.S. 1991).

Because Judge Weeks' challenged action was done in the clear absence of all jurisdiction, Judge Weeks' is not immune from a suit for damages: "[A] judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction. *Id.,* at 356-357; *Bradley* v. *Fisher,* 13 Wall. at 351." *Mireles v. Waco,* 502 U.S. 9, 12 (U.S. 1991).

Judge Weeks' is not immune in this case and his motion to dismiss must be denied.

**2. Even the moon has a dark side – judicial immunity's necessary exception**

Unable to improve upon the reasoning of or the language expressing it, Movant here

relies upon the eloquence and wisdom of The Fifth Circuit Court of Appeals to express the

absolute need for the "clear absence of all jurisdiction" exception to judicial immunity:

> "We begin our inquiry with a recognition that the absolute immunity that judges
> enjoy exists for the benefit of the judicial system and of the public, not for that of the
> judge. Only a hero could exercise an unfettered judgment while facing, day after day and
> case after case, the prospect of personal ruin implicit in permitting every losing party to
> sue him for damages. There have never been enough heroes to go around, and a sound
> policy must deal with the prospect that some who occupy the bench may not be of that
> ilk.
> In this imperfect world, however, where even the moon has a dark side, this
> manifestly necessary policy has the unfortunate effect of insulating not only the robe, but
> the person within it, from being called to account for actions that may be illegal, even
> corrupt, as is alleged here. This undesirable side effect of an otherwise valuable
> prescription can, as to the magistrate himself, be safely mitigated only slightly. All
> authorities recognize that when a judge acts in a "clear absence of all jurisdiction" he is
> not protected. But any broader or less explicit inroad upon the robe's immunity in an
> attempt to reach its wearer would invite recurring attempts at enlargement, ruinous in
> terms of judicial time and funds expended to defend even successfully against them. Thus
> the rule of judicial immunity from damages, with its single, bright-line exception, is as
> broad as, but no broader than, is necessary.
> Even so, the rule is a harsh one, laden with potential for unredressed wrong. As
> such, its scope should not be extended beyond that necessary to preserve the judge's
> independence of mind and judgment, for it is upon the manifest necessity to protect these,
> and on that alone, that the rule rests."

*Sparks v. Duval County Ranch Co.*, 604 F.2d 976, 980 (5th cir, 1979).

**3. Analysis used in consideration of motion to dismiss for failure to state a claim upon**

**which relief can be granted.**

"In considering a motion to dismiss the complaint for failure to state a claim upon which

relief can be granted, we must treat every well-pleaded, material allegation of the complaint as

admitted." *Stanaland v. Atlantic C. L. R. Co.,* 192 F.2d 432, 433 (5th Cir.-OLD 1951). "There is

no justification for granting a motion to dismiss the complaint for failure to state a claim unless

the averments in the pleading attacked disclosed with certainty that the plaintiff would not be

entitled to relief under any set of facts which could be proved in support of the claim. The test is

whether the complaint, construed in the light most favorable to the plaintiff and with every

intendment regarded in his favor, is sufficient to constitute a valid claim." *Stanaland v. Atlantic*

*C. L. R. Co.,* 192 F.2d 432, 434 (5th Cir.-OLD 1951).   "[A] motion to dismiss for failure to state

a claim should not be granted unless it appears to a certainty that the plaintiff would be entitled

to no relief under any state of facts which could be proved in support of his claim." *Des Isles v.*

*Evans,* 200 F.2d 614, 615-616 (5th Cir.-OLD 1952).

## IV. CONCLUSION

ACCORDINGLY, Judge Weeks is not immune from this lawsuit and his Motion to

Dismiss should be denied.


Respectfully Submitted,
By:


_____
Tsephanyah Y. Hawkins, Pro Se
3706 Private Road 2547
Clyde, Texas 79510
(Voice) 325-893-4790
(Fax)325-893-1805

_____
Yahohanan Y. Hawkins, Pro Se
3471 Private Road 2541
Clyde, Texas 79510
(Voice) 325-893-5961


24

## CERTIFICATE OF SERVICE

This is to certify that on this ___7th day of _C̶c̶c̶h̶h̶_, 200_5_, a true and correct

copy of the foregoing was served on the following as stated below:

**BY CERTIFIED MAIL RETURN RECEIPT REQUESTED:**

| | | |
|---|---|---|
| **Mark J Zimmermann**<br>**Tom C Clark**<br>**Jill A Malouf**<br>Dealey Zimmermann Clark &<br>Malouf<br>Turtle Creek Tower<br>3131 Turtle Creek Blvd<br>Suite 1201<br>Dallas, TX 75219-5415 | **Stephen H Suttle**<br>**Kerry DiGioia**<br>McMahon Law Firm<br>PO Box 3679<br>400 Pine St<br>Suite 800<br>Abilene, TX 79604-3679 | **Hao Le**<br>Office of the Texas Attorney<br>General<br>General Litigation Div<br>PO Box 12548<br>Austin, TX 78711-2548 |
| **Norman Oster**<br>P.O. Box 417<br>Schnecksville, PA 18015 | **Tiffani N Helms**<br>618 Hickory St<br>Abilene, TX 79601 | **Claudia Hutchison**<br>P.O. Box 233<br>Little Mt., SC 29075 |
| **Carter Law Offices**<br>618 Hickory Street<br>Abilene, Texas 79601 | **Roy B. Longacre**<br>P.O. Box 360<br>Abilene, TX 79604-0360 | **Vocedit, Inc**<br>P.O. Box 233<br>Little Mt. SC 29075 |
| **Gary M. Brown**<br>3041 South 7th<br>Abilene, TX 79605 | **StenoScribe, Incorporated**<br>PO Box 417<br>Schnecksville, PA 18078 | |
| **IN PERSON DELIVERY**<br><br>**Yahchanan Hawkins**<br>3471 Private Road 2541<br>Clyde, Texas 79510 | **CERTIFIED BY:** _____<br>Tsephanyah Hawkins, Pro Se<br>3706 Private Road 2547<br>Clyde, Texas 79510<br>325-893-4790 | |