UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF THE STATE OF TEXAS
ABILENE DIVISION

TSEPHANYAH Y. HAWKINS,
YAHCHANAN Y. HAWKINS and
Plaintiffs,

v.

**THE HONORABLE JOHN W. WEEKS,**
in his personal capacity,
**CLAUDIA HUTCHINSON,** in her personal
capacity and in her capacities with S.A.W
Solutions, Inc., StenoScribe, Incorporated,
Vocedit, Inc., and/or The South Carolina
School of Court Reporting, Inc.,
**NORMAN OSTER,** in his personal capacity
and in his capacities with S.A.W. Solutions,
Inc., StenoScribe Incorporated, Vocedit, Inc.,
and/or The South Carolina School of Court
Reporting, Inc.,
**STENOSCRIBE, INCORPORATED,**
**VICTORIA L. CARTER,**
**MARILYN GARDNER,** in her personal
capacity and her capacities with The National
Institute of Realtime Reporters, Inc.,
**JOHN CHISTOLINI,** in his personal
capacity and his capacities with The National
Institute of Realtime Reporters, Inc.,
**THE NATIONAL INSTITUTE OF REALTIME
REPORTERS, INC.,**
**S.A.W. SOLUTIONS, INC.,**
**THE SOUTH CAROLINA SCHOOL OF
COURT REPORTING, INC.,**
**VOCEDIT, INC.,**
**CHARLES C. SELF, III,**
**DONALD L. ANDERSON, JR.,**
**WHITTEN & YOUNG, P.C.,**
**CARTER LAW OFFICES,** and
**CHISTOLINI AND DESIMONE, INC.**
Defendantss

} Civil Action No.
  1-05CV-184-C

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

DEC 1 6 2005

CLERK, U.S. DISTRICT COURT
By _____
        Deputy

ANSWER OF RIYYAHNAH TIPHARAHYAH HAWKINS
TO PLAINTIFFS' FIRST AMENDED COMPLAINT                    PAGE 1

**ANSWER OF RIYYAHNAH TIPHARAHYAH HAWKINS
A/K/A CLAUDIA HUTCHINSON, STENOSCRIBE, INC.,
QANAYAH YISRAYL HAWKINS A/K/A/ NORMAN OSTER, AND
VOICEDIT, INC.
TO PLAINTIFFS' FIRST AMENDED COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

Come now RIYYAHNAH TIPHARAHYAH HAWKINS A/K/A/ CLAUDIA HUTCHISON,

hereinafter referred to as "Hutchison," STENOSCRIBE, INC.,

hereinafter referred to as "Stenoscribe," QANAYAH YISRAYL HAWKINS

A/K/A NORMAN OSTER, hereinafter referred to as "Oster," and VOCEDIT,

INC., hereinafter referred to as "Vocedit," and such parties know

collectively as "Defendants," and subject to any prior motions filed

under Rule 12(b), Fed. R. Civ. P., answer the numbered paragraphs in

the PLAINTIFFS' FIRST AMENDED COMPLAINT hereinafter referred to as

the "Complaint' as follows:

1.    Defendants denies that this Court possesses subject matter
jurisdiction under 18 U.S.C. §1595 under the allegations set forth
in the Complaint.

2.    Defendants denies that this Court possesses subject matter
jurisdiction under 28 U.S.C. §1331 under the allegations set forth
in the Complaint.

3.    Defendants denies that this Court possesses subject matter
jurisdiction under 28 U.S.C. §1343 under the allegations set forth
in the Complaint.

4.    Defendants denies that this Court possesses subject matter
jurisdiction under 18 U.S.C. §1961 under the allegations set forth
in the Complaint.

5.    Defendants denies that this Court possesses subject matter
jurisdiction under 28 U.S.C. §1367 under the allegations set forth
in the Complaint.

6.     Defendants denies that venue is proper in this District and Division.

7.     Defendants would show the Court that Plaintiff Courtroom Data Solutions, Inc. has been dismissed from this lawsuit.  Subsequent to such dismissal, Plaintiffs have forward to Defendants Plaintiff's Second Amended Petition, and have requested leave of Court to file same.  This Defendants has filed a written consent for the remaining Plaintiffs to file same so that this Defendants can properly answer same.

8. Due to such Plaintiff being dismissed, Defendants deny each and every allegation contained in paragraphs 7 through 436 of PLAINTIFF'S FIRST AMENDED COMPLAINT, unless otherwise stated herein.

9.     Pleading with particularity. Defendants respond to the numbered paragraphs of the Complaint as follows:

8. Defendants admit that the named Plaintiff Tsephanyah Yisrayl Hawkins is an individual who, to their knowledge, presently resides in Clyde, Texas, and has since 1996. **Defendants would show the court that Hutchison and this plaintiff are cousins.**  Hutchison has a son named Micahyah Hawkins, and he was named as a director of CDS. (See Exhibit "D" to PLAINTIFFS'S FIRST AMENDED COMPLAINT, Article Seven) Such Plaintiff had informed Hutchison that she could not be a director until she moved to Texas. Hutchison would also assert that she is a 50% interest owner in CDS. (See allegations contained in the PLAINTIFF'S ORIGINAL PETITION labeled Exhibit "A" to PLAINTIFFS' FIRST AMENDED COMPLAINT.) Defendants denies all other allegations.

11. Defendants admit that Stenoscribe, Inc. is a corporation organized and existing under the laws of the state of Texas. Defendants deny all other allegations contained in such paragraph at this time.

13.     Defendants admit the allegation that the Defendant mentioned in this paragraph is a corporation formed under the laws of the state of South Carolina, on August 31, 2004, with its principal place of business being in South Carolina. (See Exhibit "A" attached to ANSWER TO AMENEDE COMPLAINT filed by THE SOUTH CAROLINA SCHOOL OF COURT REPORTING, INC. and incorporated herein for all purposes as if copied verbatim.) Defendants denies all other allegations.

14. A. Defendants would show the court that CLAUDIA HUTCHISON had her name legally changed or about September 26, 1996, in Cause No.96-1082-N in the 326th District Court in and for Taylor County, Texas. A certified copy of the DECREE CHANGING NAME OF ONE ADULT is

attached hereto as Exhibit "A" and incorporated herein for all purposes as if copied verbatim. Defendants is in the process of having her name changed back to CLAUDIA MARIE HUTCHISON.

B. Defendants denies that any of such Defendants nor any of their authorized agents, servants, or employees have criminally conspired with any other named Defendants in this action.

C. Defendants admits that Hutchison presently resides in South Carolina.

**D. Defendants does admit that Hutchison utilizes a software program that Hutchison has an interest in along with Plaintiff Tsephanyah Hawkins.**

E. Attached hereto as Exhibit "B" and incorporated herein for all purposes, is a true and correct authenticated copy of the **PROVISIONAL APPLICATION FOR PATENT, the original of which was filed with the UNITED STATES PATENT AND TRADEMARK OFFICE.** Such application was filed by the Plaintiff Tsephanyah Y Hawkins. As is evidenced by such document, it appears that RIYYAHNAH TIPHARAHYAH HAWKINS (Hutchison) is a **co-inventor** with reference to the computerized court reporter system that is the basis of the state court action and the computerized court reporter system complained herein by the Plaintiffs. Therefore, it is all Defendants position that any usage of such reporter system would have been legal since Hutchinson is a co-inventor of such system and would have authorized their use of such system.

F. From 1997 to 2001 Hutchison did not perform typing or bookkeeping for the corporation. She funded the entire operation of StenoScribe, Inc. from the time of its inception, including, but not limited to, programming materials to educate Hawkins, necessary computers needed for the running of the corporation, hardware, all startup costs associated with forming the corporation. She provided these monies because she had a 50 percent ownership. The only reason that she did not handle the bookkeeping is because of geographical restrictions. The StenoScribe toll free number was always directed to her personal phone lines or her court reporting agency. From 2001 forward, she took control of the checkbook due to Hawkins' ineptness of handling payments to vendors and websites and phones being turned off. She at all times handled every aspect of the corporation except for check writing until she moved to Texas in February of 2001. Computers were sent to her in Massachusetts for her to assemble. All financial debt was charged off on her personal and business credit cards. It was always represented to her that she was a 50 percent shareholder. She denies any criminal conspiracy. She denies violating any of Hawkins' rights

18.    Defendants neither admits nor denies the allegations because it  lacks sufficient knowledge to form a belief as to their truth. The Defendants denies it criminally conspired with the Defendants Carter.

19.    Defendants neither admits nor denies the allegations unless admitted herein because it lacks sufficient knowledge to form a belief as to their truth. Defendants admits that Oster presently resides in South Carolina. Defendants admits that Oster is employed as an instructor. Defendants admits that Oster on or after August 31, 2004, has at times been an agent, servant or employee of Defendants, but never with any relation to any Plaintiff. The Defendants denies Oster has criminally conspired with the Defendants Oster. Defendants deny any other allegations contained within such paragraph.

20.    Defendants neither admits nor denies the allegations because it  lacks sufficient knowledge to form a belief as to their truth. The Defendants denies it criminally conspired with the Defendants NIRR.

21.    Defendants neither admits nor denies the allegations because it  lacks sufficient knowledge to form a belief as to their truth. The Defendants denies it criminally conspired with the Defendants Gardner.

24.  Defendants neither admits nor denies the allegations because it lacks sufficient knowledge to form a belief as to their truth. The Defendants denies it criminally conspired with the Defendants Chistolini.

25.  Defendants admit that Vocedit, Inc. is a corporation organized and existing under the laws of the state of Texas. Defendants deny any and all other allegations contained in such paragraph.

33.    Defendants neither admits nor denies the allegations because it  lacks sufficient knowledge to form a belief as to their truth. The Defendants denies it criminally conspired with the Defendants Chistolini & DeSimone, P.C.

42.  Defendants neither admits nor denies the allegations because it lacks sufficient knowledge to form a belief as to their truth. The Defendants denies it corruptly conspired to obtain or provide labor and services to the Plaintiffs.

47.    Defendants neither admits nor denies the allegations because they lack sufficient knowledge to form a belief as to their truth, but denies that the issuance of the Temporary Injunction constitutes action under color of state law.

**First Claim for Relief**
**Deprivation of Property Without Due Process**

174.    Defendants re-allege and incorporate their answers to paragraphs 1-173 as if set forth separately herein.

176.  Paragraph 176 states a conclusion of law to which no answer is required. To the extent that an answer is required, the allegations are denied.

**Second Claim for Relief**
**Deprivation of Liberty Without Due Process**

182.    Defendants re-allege and incorporate their answers to paragraphs 1-181 as if set forth separately herein.

184.    Paragraph 184 states a conclusion of law to which no answer is required. To the extent that an answer is required, the allegations are denied.

**Third Claim for Relief**
**Deprivation of 13th Amendment Right to be Free From Enslavement**

190.    Defendants re-allege and incorporate their answers to paragraphs 1-189 as if set forth separately herein.

192.    Paragraph 192 states a conclusion of law to which no answer is required. To the extent that an answer is required, the allegations are denied.

**Fourth Claim for Relief**
**Deprivation of Freedom of Expression**

198.    Defendants re-allege and incorporate their answers to paragraphs 1-197 as if set forth separately herein.

200.    Paragraph 200 states a conclusion of law to which no answer is required. To the extent that an answer is required, the allegations are denied.

**Fifth Claim for Relief**
**Deprivation of Privacy**

206.    Defendants re-allege and incorporate their answers to paragraphs 1-205 as if set forth separately herein.

208.   Paragraph 208 states a conclusion of law to which no answer is required. To the extent that an answer is required, the allegations are denied.

## Sixth Claim for Relief
## Deprivation of Property Without Due Process

214.   Defendants re-allege and incorporate their answers to paragraphs 1-213 as if set forth separately herein.

216. Paragraph 216 states a conclusion of law to which no answer is required. To the extent that an answer is required, the allegations are denied.

## Seventh Claim for Relief
## Deprivation of 13th Amendment Right to be Free From Enslavement

222.   Defendants re-allege and incorporate their answers to paragraphs 1-221 as if set forth separately herein.

224.   Paragraph 224 states a conclusion of law to which no answer is required. To the extent that an answer is required, the allegations are denied.

## Eighth Claim for Relief
## Deprivation of Freedom of Expression

230.   Defendants re-allege and incorporate their answers to paragraphs 1-229 as if set forth separately herein.

232.   Paragraph 232 states a conclusion of law to which no answer is required. To the extent that an answer is required, the allegations are denied.

## Ninth Claim for Relief
## Deprivation of Privacy

238.   Defendants re-allege and incorporate their answers to paragraphs 1-229 as if set forth separately herein.

240.   Paragraph 240 states a conclusion of law to which no answer is required. To the extent that an answer is required, the allegations are denied.

Tenth Claim for Relief
Deprivation of Property Without Due Process

246.    Defendants re-allege and incorporate their answers to
paragraphs 1-229 as if set forth separately herein.

248.    Paragraph 248 states a conclusion of law to which no answer
is required. To the extent that an answer is required, the allegations
are denied.

**Eleventh Claim for Relief**
**Deprivation of 13th Amendment Right To Be Free From Enslavement**

254.    Defendants re-allege and incorporate their answers to
paragraphs 1-229 as if set forth separately herein.

256.    Paragraph 256 states a conclusion of law to which no answer
is required. To the extent that an answer is required, the allegations
are denied.

**Twelfth Claim for Relief**
**Deprivation of Freedom of Expression**

262.    Defendants re-allege and incorporate their answers to
paragraphs 1-229 as if set forth separately herein.

264.    Paragraph 264 states a conclusion of law to which no answer
is required. To the extent that an answer is required, the allegations
are denied.

**Thirteenth Claim for Relief**
**Deprivation of Privacy**

271.    Defendants re-allege and incorporate their answers to
paragraphs 1 -270 as if set forth separately herein.

273.    Paragraph 273 states a conclusion of law to which no answer
is required. To the extent that an answer is required, the allegations
are denied.

**Fourteenth Claim for Relief**
**Deprivation of Property Without Due Process**

279.    The Defendants re-allege and incorporate their answers to
paragraphs 1-278 as if set forth separately herein.

281.    Paragraph 281 states a conclusion of law to which no answer
is required. To the extent that an answer is required, the allegations
are denied.

**Fifteenth Claim for Relief**
**Deprivation of 13th Amendment Right to Be Free from Enslavement**

287.   Defendants re-allege and incorporate their answers to paragraphs 1-286 as if set forth separately herein.

289. Paragraph 289 states a conclusion of law to which answer is required. To the extent that an answer is required, the allegations are denied.

**Sixteenth Claim for Relief**
**Deprivation of Freedom of Expression**

295.   Defendants re-allege and incorporate their answers to paragraphs 1-294 as if set forth separately herein.

297.   Paragraph 297 states a conclusion of law to which no answer is required. To the extent that an answer is required, the allegations are denied.

**Seventeenth Claim for Relief**
**Deprivation of Privacy**

303.   Defendants re-allege and incorporate their answers to paragraphs 1-302 as if set forth separately herein.

305. Paragraph 305 states a conclusion of law to which no answer is required. To the extent that an answer is required, the allegations are denied.

**Eighteenth Claim for Relief**
**RICO**

311.   Defendants re-allege and incorporate their answers to paragraphs 1 -310 as if set forth separately herein.

313. Paragraph 313 states a conclusion of law to which no answer is required. To the extent that an answer is required, the allegations are denied.

**Nineteenth Claim for Relief**
**RICO Conspiracy**

322.   Defendants re-allege and incorporate their answers to paragraphs 1 -322 if set forth separately herein.

324.   Paragraph 324 states a conclusion of law to which no answer is required. To the extent that an answer is required, the allegations are denied.

**Twentieth Claim for Relief**
**RICO**

333.   Defendants re-allege and incorporate their answers to paragraphs 1-332 if set forth separately herein.

335.   Paragraph 335 states a conclusion of law to which no answer is required. To the extent that an answer is required, the allegations are denied.

**Twenty-First Claim for Relief**
**RICO**

343.   Defendants re-allege and incorporate their answers to paragraphs 1-342 as if set forth separately herein.

345.   Paragraph 345 states a conclusion of law to which no answer is required. To the extent that an answer is required, the allegations are denied.

**Twenty-Second Claim for Relief**
**Forced Labor**

353.   Defendants re-allege and incorporate their answers to paragraphs 1-352 as if set forth separately herein.

**Twenty-Third Claim for Relief**
**Goods Sold and Delivered**

361.   Defendants re-allege and incorporate their answers to paragraphs 1 -360 as if set forth separately herein.

**Twenty-Fourth Claim for Relief**
**Monies Had and Received**

365-368.   This Count relates to parties other than the Defendants to which no answer is required. To the extent that an answer is required the allegations are denied.

**Twenty-Fifth Claim for Relief**
**Monies Had and Received**

369-372.    This Count relates to parties other than the Defendants to which no answer is required. To the extent an answer is required the allegations are denied.

**Twenty-Sixth Claim for Relief**
**Monies Had and Received**

373.    Defendants re-allege and incorporate their answers to paragraphs 1-343 as if set forth separately herein.

374- 376. This Count relates to parties other than the Defendants to which no answer is required. To the extent an answer is required the allegations are denied.

**Twenty-Seventh Claim for Relief**
**Legal Malpractice**

377-384.   This Count relates to parties other than the Defendants
to which no answer is required. To the extent an answer is required
the allegations are denied.

**Twenty-Eighth Claim for Relief**
**Unjust Enrichment**

385.   Defendants re-allege and incorporate their answers to
paragraphs 1-384 as if set forth separately herein.

**Twenty-Ninth Claim for Relief**
**Intentional Infliction of Emotional Distress**

389.   Defendants re-allege and incorporate their answers to
paragraphs 1-388 as if set forth separately herein.

**Thirtieth Claim for Relief**
**Breach of Fiduciary Duty**

393.   Defendants re-allege and incorporate their answers to
paragraphs 1-392 as if set forth separately herein.

395-401   This Count relates to parties other than the Defendants
to which no answer is required. To the extent that an answer is
required the allegations are denied.

**Thirty-First Claim for Relief**
**Fraud**

402.   Defendants re-allege and incorporate their answers to
paragraphs 1-401 as if set forth separately herein.

403-408   This Count relates to parties other than the Defendants
to which no answer is required. To the extent that an answer is
required the allegations are denied.

**Thirty-Second Claim for Relief**
**Breach of Fiduciary Duty**

409.   Defendants re-allege and incorporate their answers to
paragraphs 1-409 as if set forth separately herein.

410- 418. This Count relates to parties other than the Defendants to which no answer is required. To the extent that an answer is required the allegations are denied.

**Thirty-Third Claim for Relief**
**Conspiracy to Deprive Rights**

419.    Defendants re-allege and incorporate their answers to paragraphs 1 -418 as if set forth separately herein.

421.    Paragraph 421 states a conclusion of law to which no answer is required. To the extent that an answer is required, the allegations are denied.

**Thirty-Fourth Claim for Relief**
**Neglect to Prevent Conspiracy**

429. Defendants re-allege and incorporate their answers to paragraphs 1-418 as if set forth separately herein.

**AFFIRMATIVE DEFENSES**

**First Affirmative Defense**

This Court lacks personal jurisdiction over the Defendants The South Carolina School of Court Reporting. Such corporation was formed under the laws of the state of South Carolina on or after August 31, 2004. Attached hereto and incorporated herein as Exhibit "A" is a true and correct copy of an authenticated document certifying such fact.

**Second Affirmative Defense**

This Court lacks subject matter jurisdiction over the claims asserted under 42 U.S.C. § 1983 as the complaint does not allege cognizable state action upon which such claims must be based.

**Third Affirmative Defense**

The Plaintiffs' First Amended Complaint fails to state a claim upon which relief can be granted against this Defendants.

**Fourth Affirmative Defense**
The Complaint seeks to assert claims on behalf of the corporate plaintiff Courtroom Data Solutions, Inc. which is not represented by counsel admitted to practice law in the State of Texas or in the Federal District Court for the District of Texas. Accordingly those

claims can not proceed against the Defendants unless an appearance by counsel is filed on behalf the Plaintiff, Courtroom Data Solutions, Inc.

**Fifth Affirmative Defense**

The Amended Complaint fails to plead its allegations of fraud with particularity as required by Fed. R. Civ. P. 9(b).

**Sixth Affirmative Defense**

The Complaint fails to plead its allegation of special damages with particularity as required by Fed. R. Civ. P. 9(g).

**Seventh Affirmative Defense**

The Amended Complaint fails to plead with particularity the required predicate acts necessary to set forth a claim under 18 U.S.C. §§ 1961 and 1962.

**Eighth Affirmative Defense**

A. Based on information and belief, Hutchinson's real name at this time is Riyyahnah Tipharahyah Hawkins.                              ·

B. Attached hereto as Exhibit "B" and incorporated herein for all purposes, is a true and correct authenticated copy of the **PROVISIONAL APPLICATION FOR PATENT, the original of which was filed with the UNITED STATES PATENT AND TRADEMARK OFFICE**. Such application was filed by the Plaintiff Tsephanyah Y Hawkins. As is evidenced by such document, it appears that Hutchison is a **co-inventor** with reference to the computerized court reporter system that is the basis of the state court action and the computerized court reporter system complained herein by the Plaintiffs. Defendants believes and therefore alleges that any usage of such reporter system would have been with the express consent of Defendants Hutchison, who is a co-inventor of such system.

C. Based on information and belief, this Defendants believes that Hutchison has a right to have the computerized court reporter system, and market it and use it any way she wants. Defendants would show the court that at all relevant time Hutchison gave them permission to utilize in any way such computer reporting software.

WHEREFORE, having fully answered, said Defendants, respectfully pray

judgment of the Court that the Plaintiffs claims against this

Defendants be dismissed, that Plaintiffs take nothing, that

Defendants recover their costs and reasonable attorneys' fees, and

for such other and further relief, general or special, at large or

in equity, to which it may be entitled.

The Defendants demands a jury trial on all counts.

RESPECTFULLY SUBMITTED,

Gary M. Brown, SBN 03123500
3041 South 7th, Abilene, Texas 79605
(325)673-9599; fax (325)673-5772
Attorney for Defendants
The South Carolina School of
Court Reporting, Inc.

CERTIFICATE OF SERVICE

This is to certify that on this the __16__ day of November, 2005, a true

and correct copy of the foregoing was served on all parties of record

by Certified Mail, Return Receipt Requested, or by Fax if number is

show, as addressed below:

Tsephanyah Y. Hawkins  Certified Mail Return Receipt Requested
3706 Private Road 2547
Clyde, Texas 79510

Yahehanan Y. Hawkins   Certified Mail Return Receipt Requested
3471 Private Road 2541
Clyde, Texas 79510

Tom C. Clark
3131 Turtle Creek Voulevard
Suite 1201
Dallas, Texas 75219
Fax 214.559.4466
Attorney for Whitten & Young, P.C.
Charles C. Self III, and
Donald L. Anderson

Hao Le
Assistant Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Fax 512.320.0667
Attorney for the
Honorable John W. Weeks

Stephen H. Suttle
Kerry DiGioia
400 Pine Street, Suite 800
Abilene, Texas 79604
Fax 325.676.8836
Attorneys for Marilyn Gardner,
John A. Chirtolini and The National
Institute of Realtime Reporters, Inc.

ANSWER OF RIYYAHNAH TIPHARAHYAH HAWKINS
TO PLAINTIFFS' FIRST AMENDED COMPLAINT                    PAGE 16

```
Victoria L. Carter
Carter Law Offices
618 Hickory Street
Abilene, Texas 79601

S.A.W. Solutions, Inc.
1670 Briarwood Circle
Bethlehem, Pennsylvania 18015
```

_____

Gary M. Brown

District Court Of
Taylor County, Texas
___326___ Judicial District

No. _____

FILED

'96 SEP 26 AM 9 30

JOANN LACKEY
DISTRICT CLERK
TAYLOR COUNTY, TEXAS

## DECREE CHANGING NAME OF ONE ADULT

This case was tried on _September 26, 1996_
Petitioners, CLAUDIA MARIE HUTCHISON appeared in person and by attorney
and announced ready for trial.

The Court examined the pleadings and heard the evidence and argument of
counsel. The Court finds that all necessary residence qualifications and
prerequisites of law have been legally satisfied, that this Court has jurisdiction of
all the parties and subject matter of this cause.

The Court finds that there is good cause for the change of the name of the
Petitioner and that the change of name is in the interest or to the benefit of the
Petitioner.

IT IS ORDERED that the name of the Petitioner, CLAUDIA MARIE
HUTCHISON be changed.

IT IS ORDERED that the new name of the Petitioner be and is RIYYAHNAH
TIPHARAHYAH HAWKINS.

All costs of Court in this cause are adjudged against the Petitioner.

SIGNED this _26th_ day of _September_ 19 _96_.

_Alita Hacker_
Judge Presiding

STATE OF TEXAS
COUNTY OF TAYLOR
CERTIFIED TO BE A TRUE AND CORRECT COPY
OF THE ORIGINAL IN MY CUSTODY
GIVEN UNDER MY HAND AND SEAL OF OFFICE
DATED _December 6_ A.D., 20_05_
PATRICIA HENDERSON
DISTRICT CLERK OF TAYLOR COUNTY, TEXAS
BY_____ DEPUTY

EXHIBIT "A"                    150-814



# THE UNITED STATES OF AMERICA

## TO ALL TO WHOM THESE PRESENTS SHALL COME:

UNITED STATES DEPARTMENT OF COMMERCE

United States Patent and Trademark Office

November 04, 2004

THIS IS TO CERTIFY THAT ANNEXED HERETO IS A TRUE COPY FROM THE RECORDS OF THE UNITED STATES PATENT AND TRADEMARK OFFICE OF THOSE PAPERS OF THE BELOW IDENTIFIED PATENT APPLICATION THAT MET THE REQUIREMENTS TO BE GRANTED A FILING DATE UNDER 35 USC 111.

APPLICATION NUMBER: *60/051,623*
FILING DATE: *July 07, 1997*

By Authority of the
COMMISSIONER OF PATENTS AND TRADEMARKS

M. K. HAWKINS
Certifying Officer

EXHIBIT "B"

75-214                    A/PR&

Please type a plus sign (+) inside this box → [+]

PTO/SB/16 (3-97)
Approved for use through 1/31/98.   OMB 0651-0037
Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## PROVISIONAL APPLICATION FOR PATENT COVER SHEET
This is a request for filing a PROVISIONAL APPLICATION FOR PATENT under 37 CFR 1.53 (b)(2).

07/07/97

### INVENTOR(S)

| Given Name (first and middle [if any]) | Family Name or Surname | Residence (City and either State or Foreign Country) |
|---|---|---|
| Tsephanyah Yisrayl | Hawkins | Abilene, Texas |
| Riyyahnah Tipharahyah | Hawkins | Abilene, Texas |

[ ] *Additional inventors are being named on the ___ separately numbered sheets attached hereto*

### TITLE OF THE INVENTION (280 characters max)

### COMPUTERIZED VOICE WRITER COURT REPORTING SYSTEM

#### CORRESPONDENCE ADDRESS

*Direct all correspondence to:*

[ ] Customer Number | Type Customer Number here | → | *Place Customer Number Bar Code Label here*

OR

| [✓] Firm or Individual Name | Tsephanyah Hawkins |
|---|---|
| Address | P.O. Box 839 |
| Address | |

| City | Abilene | State | Texas | ZIP | 79604 |
|---|---|---|---|---|---|
| Country | USA | Telephone | 915-893-4265 | Fax | |

### ENCLOSED APPLICATION PARTS (check all that apply)

| | | |
|---|---|---|
| [✓] Specification *Number of Pages* | 28 | [✓] Small Entity Statement |
| [✓] Drawing(s) *Number of Sheets* | 15 | [✓] Other (specify) Certificate of mailing By Express Mail |

### METHOD OF PAYMENT OF FILING FEES FOR THIS PROVISIONAL APPLICATION FOR PATENT (check one)

[✓] A check or money order is enclosed to cover the filing fees

[ ] The Commissioner is hereby authorized to charge filing fees or credit any overpayment to Deposit Account Number.

FILING FEE AMOUNT ($)

75.00

The invention was made by an agency of the United States Government or under a contract with an agency of the United States Government.

[✓] No.

[ ] Yes, the name of the U.S. Government agency and the Government contract number are:___

*Respectfully submitted,*

SIGNATURE _Tsephanyah Yisrayl Hawkins_   Date 7/7/97

TYPED or PRINTED NAME _Tsephanyah Yisrayl Hawkins_   REGISTRATION NO. (if appropriate)

TELEPHONE 915 - 893 - 4265   Docket Number:

## USE ONLY FOR FILING A PROVISIONAL APPLICATION FOR PATENT

Burden Hour Statement: This form is estimated to take 0.2 hours to complete. Time will vary depending upon the needs of the individual case. Any comments on the amount of time you are required to complete this form should be sent to the Chief Information Officer, Patent and Trademark Office, Washington, DC 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Box Provisional Application, Assistant Commissioner for Patents, Washington, DC 20231

Provisional Patent Application

for

## COMPUTERIZED VOICE WRITER COURT REPORTING SYSTEM

FIELD OF THE INVENTION

This invention relates to a court reporting system whereby the audio of a

legal proceeding and the audio of the court reporter repeating what they hear

and commenting on the occurrences of the proceeding are electronically

recorded, indexed and retrieved for repeating back and transcription.

BACKGROUND OF THE INVENTION

Voice Writer Reporters are Court Reporters that repeat legal proceedings

verbatim into a tape recorder. All events occurring in a proceeding, legal or

otherwise are thereby stored for repeating, transcription, and future reference.

Voice writer court reporters commonly utilize a cassette recorder that

typically has two tracks: a live track for recording the audio of the proceedings

and a reporter track to record the voice of the court reporter repeating the

2

audio of the proceedings and the events of the proceedings as he or she hears them. The record is then transcribed from the cassette. Often the record is made on a cassette recorder operating at the unusual speed of 5/16 inch per second.

There are many significant disadvantages inherent in this system. Among them is the fact that cassette tapes, especially when the reporter is under the stress often associated with court reporting, don't always go into the recorder correctly. They often get stuck, they often get jammed, they often get mixed up, and they can get inadvertently erased.

Another significant disadvantage with the use of cassette tapes is the difficulty in repeating back questions. To repeat a question, the Voice Writer must rewind the cassette tape to the place where the question began. Finding that location is awkward because there is no controlled way to index questions other than the last question that is asked. Furthering the problem is the common practice of attorneys to strike questions.

Another significant disadvantage with the use of cassette tapes is the short length of the tape. Typically tapes will record for only 30 minutes before needing to be changed or flipped over. This need often arises during critical testimony and often the court reporter is unaware of the fact that the tape has

3

reached its end. The result is often a costly and irrecoverable loss of a portion of the record or an interruption in the proceedings.

Another disadvantage with the use of cassette tapes is the lack of a means to notify the reporter, when they are transcribing, of events occurring away from the live microphone or silent objections where an attorney simply raises his or her hand. Events and objections are usually repeated by the court reporter into the court reporter track of the cassette, however, reporters typically type from the live track of the cassette and they often miss such events and silent objections which can only be heard on the court reporter track of the cassette.

Other disadvantages include the need for a special cassette machine to play back the 5/16 inch per second tapes used by many courts.

Other disadvantages include the need to use a foot-pedal to backspace the tape when transcribing. The foot-pedal is both tiring and inefficient and has been known to cause injury because it often has to be pushed several thousand times a record.

Other disadvantages include the need for a specially modified transcriber so the reporter can switch between the courtroom track and the track containing the voice of the reporter. It is not only costly, but it also requires

4

that the reporter remove her hands from the keyboard in order to switch tracks; this causes both fatigue and inefficiency.

Other disadvantages include the tedium of transferring notes from paper to the final, transcribed record.

Other disadvantages include the low fidelity of cassette tapes, the lack of any means to take notes other than on paper, and the possibility of recording over the record after repeating a question.

There are many systems and inventions that attempt to solve the problems associated with court reporting, however, almost without exception these attempts solve the problems of court reporters that use the stenotype machine. This invention's primary object is to solve many problems associated with voice writer court reporting.

It is one object of the present invention to provide a system that does not use cassette tapes and does not have the problems of tapes not going into the recorder, tapes jamming, tapes getting mixed up, and tapes getting inadvertently erased.

It is one object of the present invention to provide a system that can speed up audio dubbed from 5/16 inch per second tapes played on a regular

5

cassette player into the system so they can be transcribed at a comfortable speed using the system.

It is one object of the present invention to provide a system that will simultaneously record two or more tracks of audio for 8 or more hours uninterrupted.

It is another object of the present invention to provide a system that will backspace the record with a simple and selectable keyboard key combination while the system runs on a computer that is also running the word processor and or voice typing system.

It is another object of the present invention to increase the efficiency of transferring case information and notes to the final, transcribed report by saving that information into a database of standard format so it can be imported into most word processor programs.

Yet another object of the present invention is to increase the efficiency of the repeating of questions by a means that indexes questions in reverse order of their being asked, adjusts their index relative to the last question asked, then plays back those questions corresponding to user input according to their count from the last question asked.   So if an attorney asks to hear the last question again, the reporter can hit, in the preferred embodiment, the Function-1 key.

6

To hear the second to last question, the reporter would hit the Function-2 key etc...

Yet another object of the present invention is to provide a system that will prevent a stricken question from being inadvertently repeated back.

Yet another object of the present invention is to provide a system which will allow a voice writer to keep notes including hard to spell words and phrases with a method for moving rapidly to the record at the point of those notes.

Still another object of the present invention is to provide a system that will prevent a reporter from inadvertently erasing the record or a portion of the record.

Still another object of the present invention is to provide a system that will, upon user request, rapidly switch from track to track by simply using a selectable keyboard key combination that can be used on the same computer and at the same time as a word processor program.

Still another object of the present invention is to provide a system that allows the user to easily change the play speed for efficient comprehension.

7

Still another object of the present invention is to provide a system that notifies the reporter, while they are transcribing, of events such as objections and alerts.

Still another object of the present invention is to provide a system that can run on relatively inexpensive notebook computers, and a system that can run along with a word processor when the system is in the transcriber mode.

Still another object of the present invention is to provide a system that can use an ordinary keyboard and/or pointing device such as a mouse as its primary control input.

SUMMARY

The foregoing objects have been achieved by this invention which is a court reporting system whereby the testimony of individuals and the voice of a court reporter repeating that testimony and describing events surrounding it are recorded and transcribed and, more particularly, a court reporting system for providing and transcribing an indexed, digital audio record under the control of a single court reporter comprising a computer loaded with software together having a keyboard and pointing device for court reporter control, and audio input of one or more tracks; a video display or other device for indicating operational modes, software status, input and output levels, event counts, and

8

record and machine status; an audio output of one or more tracks for reading

back questions, verifying the record, and transcription; a system clock; a short-

cut key selection means for allowing operation of the transcription program

concurrently with a word processor program; an event indexing means allowing

the indexing and playback of the record at categorized events including

questions, objections and hard to spell words including names; means easing

record capture and transcription including means to vary playback speed, a

means to record 5/16 inch per second court tapes directly from a regular 1 ¼

inch per second cassette player into the system and play it back at a

comfortable speed,  and  means to notify reporter of objections and alerts on

the record while they are transcribing the record, means to vary transcription

backspace and means to adjust the volume and record levels, means to rapidly

repeat back questions, objections and other courtroom events, a means to

strike questions from the index in order to maintain an accurate question order

and eliminate the inadvertent reading back of stricken questions; means for

reducing reporter paperwork including a graphical interface window into which

the reporter can enter and retrieve case information, a notes window for

maintaining and correcting hard to spell words and phrases and for quickly

finding and playing back testimony on a noted subject, and automatic on-

9

record and off-record indexing; means for simplifying system usage including a

means to indicate disk and record time remaining, a means for indicating

record and playback audio levels, objection and question counts, and a means

for automatically saving and retrieving system settings including volume levels,

speed settings, backspace settings, filenames etc...; and a means to transfer data

to other computers or storage devices for archiving, review, or transcription.


**BRIEF DESCRIPTION OF THE DRAWINGS**

FIG. 1 is a perspective view of the preferred embodiment of the

invention.

FIG. 2 is a table showing the event database linked to the live audio and

the court reporter audio tracks.

FIG. 3 is a table showing the fields contained in the case information

database

FIG. 4 is a drawing depicting a voice writer court reporting system

according to the present invention in its preferred embodiment.

FIGS. 5-9 are the flow chart of the system in its reporting mode.

FIGS. 10-15 are the flow chart of the system in its transcribing mode.

10

## DETAILED DESCRIPTION OF THE INVENTION

The court reporting system of the present invention is depicted in Fig. 4. The heart of the system is a control and processing routine comprising of a program which directs the acquisition, conversion and storage of audio data, reporter input of events and commands, program information display and audio output through a series of steps and processes that direct and configure the hardware components of the embodiment.

In the preferred embodiment, depicted in Fig. 1 and 4, the central control and processing routine 209 resides on a notebook computer 304 and is interfaced via a Graphical User Interface operating system to the hardware components of the embodiment. As those skilled in the art will appreciate, the central control and processing routine 209 could instead utilize a non-Graphical User Interface operating system or reside on a microcontroller and interface directly with the hardware components of the invention sans operating system.

As Fig. 1 illustrates, the preferred embodiment includes a notebook computer 304 that includes the hardware components of the invention. These comprise storage media in the form of a hard drive 207 that, as those skilled in the art will appreciate, could instead be an optical disk drive, magnetic tape drive, or other device capable of storing digitized audio; an analog to

11

digital/digital to analog converter 205 designed to convert analog audio into

digital data at a sampling rate sufficient to produce adequate audio fidelity that,

in the preferred embodiment, resides in the notebook computer in the form of

a sound integrated circuit; a user interface that, in the preferred embodiment,

comprises of the notebook's keyboard 307, pointing device and video display

305 and could, as those skilled in the art will appreciate, also comprise a voice

recognition program for both system control and transcription; one or more

audio sources that, in the preferred embodiment, include a line-input 308 for

dubbing cassette tapes onto the system, a courtroom live microphone 302 a

reporter's microphone 303 and an amplifier, mixer or sound compressor; and

an audio output transducer that, in the preferred embodiment, consists of a set

of headphones 301.

Turning now to central control and processing routine 209 utilized by

the present invention. The central control and processing routine 209 operates

in one of two modes, therefore it is depicted by two logic flow charts. The

first, Figs. 5-9, is the flow chart of the central control and processing routine

209 in its reporting mode. The second, Figs. 10-15, is the flow chart of the

central control and processing routine 209 in its transcribing mode. Each step

12

of the central control and processing routine 209 will be discussed in detail:
first, the flow chart of Figs. 5-9.

The program begins in subroutine Load Program 41 where it transfers
from nonvolatile storage into the computer's operating memory.  Depending
upon the embodiment of the invention, this may be the result of boot-up or
user input.  It then proceeds to subroutine Initialize 42 where it initializes
variables, files and device drivers.  It then begins two continuously running yet
independent instruction loops the first of which begins in subroutine Get
Status Info 43 which obtains information including the current filename, disk
time remaining, audio input and output levels, event counts, current track,
current notes, and file length data.  The program then proceeds to subroutine
Display Info 44 which displays the information obtained by subroutine Get
Status Info 43 and proceeds back to subroutine Get Status Info 43 completing
the circuit of the first of two continuously running loops.

Subroutine Initialize 42 then proceeds to begin the second
continuously running yet independent loop that awaits user input and acts on it
then repeats the loop.  This loop begins with subroutine Detect User Input 45
which awaits user input and passes that input to branch subroutines Event
Marker 46, Record 50, Play Question 54, Change Speed 59, Adjust Volume 62,

13

Change Track 64, Enter Note 67, Play Note 71, See Case Information 75, Correct Notes 78, Stop Recording 81, Strike Last Question 84, and Shut Down 86. Each of those branch subroutines branches to other subroutines depending upon user input.   Those branch subroutines will now be discussed in detail.

If the user input is an event marker, subroutine Event Marker 46 causes the program to proceed to subroutine Determine Category of Event 47 that determines the category of the event marker by using a look up table to compare user input to pre-selected input values. Those values can be key presses, key-press combinations, pointer actions or other forms of user input depending upon the embodiment of the invention; the categories they represent can include questions, objections, alerts, spelling inputs, off-records, and on-records. After determining the category of the user input, the program then proceeds to subroutine Get Current Audio File Position 48 that determines the current audio file position.   The program then moves to subroutine Store Event 49 that stores the event in the database depicted by Fig. 2 by placing the file position in the File Position field 402, and placing the event category in the Event Type field 403.   The program then proceeds back to subroutine Detect User Input 45 where it awaits further user input.

14

If the user input is a request to record, subroutine Record **50** causes the program to proceed to subroutine Is System Already Recording **51** which determines if the system is already in the record mode. If the program is not in the record mode, the program proceeds to subroutine Go to End of Audio File **52** that moves the file pointer to the end of the file. This prevents accidental erasure of any portion of the record. The program then proceeds to subroutine Store On-Record Event And Record **53** that stores an on-record event in the database Fig. 2 by placing an On-Record event in the Event Type field **403**, the current audio file position in the File Position Field **402**, the time in the Extra Data field **407**, and the length of the time data in the Extra Data Length field **406**. It then places the Analog to Digital Converter **205** that, in the preferred embodiment is a sound card or chipset, into the input mode. The Analog to Digital Converter **205** then digitizes audio from the court live microphone **302** and the reporter microphone **303** and that data is placed onto the storage. The program then proceeds back to subroutine Detect User Input **45** where it awaits further user input.

If the user input is a request to play back a question, subroutine Play Back a Question **54** causes the program to proceed to subroutine Determine Question Number **55** which determines from user input how many questions

15

back the question is that the user wants played back. In the preferred

embodiment, the function keys on the notebook's keyboard 307 are used for

this purpose. F1 means play back the last question, F2 means play back the

second to last question etc.... As those skilled in the art will appreciate, other

inputs may be pre-selected for this purpose depending upon the embodiment

of the invention. The program then moves to subroutine Count Back From

Current 57 where it determines which row of the database depicted in Fig. 2

contains the question that is the requested number of questions back from the

current file position. It selects that row. The program then proceeds to

Retrieve Question Position 58 where it retrieves the file position of the

requested question from the File Position field 402 of the selected row. The

program then moves to subroutine Play Question 61 where it moves the file

pointer to that of the requested question and places the system in play mode.

The program then proceeds back to subroutine Detect User Input 45 where it

awaits further user input.

   If subroutine Change Speed 59 determines that the user input is a

request to adjust the playback speed, the program proceeds to subroutine

Adjust Speed 60 where the sampling rate of the Digital to Analog Converter

16

205 is adjusted according to user input. The program then proceeds back to

subroutine Detect User Input 45 where it awaits further user input.

If subroutine Adjust Volume 62 determines that the user input is a

request to adjust volume, the program proceeds to subroutine 63 where the

volume of the Digital to Analog Converter 205 is adjusted. The program then

proceeds back to subroutine Detect User Input 45 where it awaits further user

input.

If the subroutine Change Track 64 determines that the user input is a

request to change the playback track, the program proceeds to subroutine

Determine Track 65 where it determines which track to switch to.  The

program then proceeds to subroutine Set Track 66 where it parses and

disperses the proper data from the selected track to the Digital to Analog

Converter 205. The program then proceeds back to subroutine Detect User

Input 45 where it awaits further user input.

If subroutine Enter Note 67 determines that the user input is the input

of a note, which can be a note, spelling word or phrase, the program moves to

subroutine Get Note Position 68 where it determines the current audio file

position.  The program then moves to subroutine Store Note 69 where it stores

the note into the database depicted by Fig. 2 by placing the note into the Extra

17

Data field 407, the current file position into the File Position field 402, the note data length in the Extra Data Length field 406, and placing a Spelling category into the Event Type field 403. The result is depicted in the spelling row example 413. The program then moves to subroutine Add Note To List 70 where it adds the note to a list for display to the user. The program then proceeds back to subroutine Detect User Input 45 where it awaits further user input.

If subroutine Play Note 71 determines that the user input is a request to play back the record at the point of a note, the program moves to subroutine Determine Note 72 where it determines which note in the database to play back. In the preferred embodiment it does this by determining which note was selected with the pointing device. The program then moves to subroutine Retrieve Note 73 where it selects the appropriate row from the database depicted in Fig. 2. The program then moves to subroutine Play Note 74 where it moves the file pointer to the file position indicated by the File Position field 402 of the selected row and sets the system into the play mode. The program then proceeds back to subroutine Detect User Input 45 where it awaits further user input.

18

If subroutine See Case Information **75** determines that the user input is a request to see or modify case information, the program moves to subroutine Display Case Information **76** where the data stored in the Case Information Database depicted in Fig. 3 (which, in the preferred embodiment, is a standard database that can be imported into common word processing programs) is displayed.  The program then waits for the user to request to close case information then proceeds to subroutine Close Case Information **77** where it stores any changes made to the information by the user into the Case Information Database Fig. 3. The program then proceeds back to subroutine Detect User Input **45** where it awaits further user input.

If subroutine Correct Notes **78** determines that the user input is a request to correct notes, it moves to subroutine Display notes **79** where the program displays the notes and allows corrections to be made to them.  Upon user request, the program moves to subroutine Save Notes **80** where it stores the note corrections to the database adding the corrections to the original notes.  The program then proceeds back to subroutine Detect User Input **45** where it awaits further user input.

If subroutine Stop Recording **81** determines that the user input is a request to stop recording, the program moves to subroutine Store Off-Record

19

Event 82 where it stores an off-record event in a new row of the database depicted in Fig. 2 by placing an Off-Record event in the Event Type field **403**, the current audio file position in the File Position Field **402**, the time in the Extra Data field **407**, and the length of the time data in the Extra Data Length field **406**. The program then proceeds to subroutine Stop Recording **83** where it places the program in stop mode. The program then proceeds back to subroutine Detect User Input **45** where it awaits further user input.

If subroutine Strike Last Question **84** determines that the user input is a request to strike the last question, the program moves to subroutine Strike Question **85** where it selects the row containing the last question event in the database depicted in Fig. 2. The program then sets the Stricken field **405** of the selected row to a value of True. From that point forward, that event is no longer considered a question event by the program. The program then proceeds back to subroutine Detect User Input **45** where it awaits further user input.

If the subroutine Shut Down Program **86** determines that the user input is a request to shut down the program, the program proceeds to the subroutine Is System Recording **87** where it determines if the program is currently recording. If the program is recording, the program moves to subroutine

20

Store Off-Record Event 88 where it stores an off-record event in the database

Fig. 2 by placing an Off-Record event in the Event Type field 403, the current

audio file position in the File Position Field 402, the time in the Extra Data

field 407, and the length of the time data in the Extra Data Length field 406.

The program then moves to subroutine Stop Recording 90 where it places the

program in the stop mode. Then the program moves to subroutine Terminate

89 where it stores all control settings to a file and unloads itself from the

central processing memory.

Thus is generated a digital record of the proceedings, an example of

which is depicted in Fig. 2. The fields of the database 401-407 are filled with

sample rows of information 410-415 according to their linking by the File

Position field 402 to the Courtroom Digitized Audio data 408 and the Reporter

Digitized Audio data 409.

We now turn to Figs. 10-15 to cover the flow chart of central control

and processing routine 209 in its transcribing mode.

The program begins in subroutine Load Program 101 where it transfers

from nonvolatile storage into the central processing unit's operating memory.

Depending upon the embodiment of the invention, this may be the result of

boot-up or user input. It then proceeds to subroutine Initialize 102 where it

21

initializes variables, files and device drivers. From there the program begins

two continuous but independent loops the first of which starts in subroutine

Get Status Info 103 which obtains information including the current filename,

disk time remaining, audio input and output levels, event counts, current track,

current notes, and file length data. The program then proceeds to subroutine

Past Event 104 which determines if the current file position is beyond any

events about which the reporter needs to be notified such as objections or

alerts. If it is, the program proceeds to subroutine Notified 105 where it

determines if the reporter has already been notified of that event. If not, the

program proceeds to subroutine Notify 107 where it displays information about

the event to the reporter and, optionally, places the program in the stop mode.

The program then proceeds to subroutine Mark Event Displayed 106 where it

marks that event as having been displayed by setting the Displayed field 404 of

that event's row in the database depicted in Fig. 2 to a value of true. If the

current file position is not past such an event, the program moves to

subroutine Display Info 108 where it displays the info obtained in subroutine

Get Status Info 103. The program then completes the circuit of the continuous

loop by proceeding to subroutine Get Status Info 103.

22

After beginning the first of two continuously running but independent loops, the program proceeds to begin the second of the loops. Subroutine Initialize 102 then proceeds to begin the second continuously running yet independent loop that awaits user input and acts on it then repeats the loop. This loop begins with subroutine Detect User Input 109 which awaits user input and passes that input to the following branch subroutines: Is Play 110, Adjust Backspace 114, Is Backspace 116, Is Adjust Speed 118, Is Volume 120, Is Toolbar 122, Is Stop 124, Is Rewind 126, Is Fast Forward 128, Is See Case Information 130, Is Change Track 133, Is See Notes 136, Is Change Short-cut Keys 142, Is Copy 145, Is 5/16 147, Is End 149.  Each of those branch subroutines branches to other subroutines depending upon user input.   Those branch subroutines will now be discussed in detail.

If subroutine Is Play 110 determines that the user input is a request to play the record, the program moves to subroutine 5/16 111 to determine if the user has previously placed the program in 5/16 inch per second mode.  If the user has placed the program in 5/16 inch per second mode, subroutine Play Slow 113 sets the sampling rate of the Digital to Analog Converter 205 to 25% of the normal rate.  This allows the transcribing of data that has been dubbed from a 1 ¼ inch per second cassette player playing cassettes recorded at 5/16

23

inch per second cassettes. In the preferred embodiment of the invention, the dubbing is done via line input jack 308 of the preferred embodiment's notebook computer 304. The program then goes into play mode. If the user hasn't placed the program in 5/16 inch per second mode, the program proceeds to subroutine Play 112 where it plays at the normal rate. The program then proceeds back to subroutine Detect User Input 109 where it awaits further user input.

If subroutine Adjust Backspace 114 determines that the user input is a request to adjust the backspace amount, the program sets the distance in time the record will rewind before playing again when a request to back space is entered. This variable is used by the subroutine Backspace 117 when a backspace of the record is requested. The program then proceeds back to subroutine Detect User Input 109 where it awaits further user input.

If subroutine Is Backspace 116 determines that the user input is a request to backspace, the program moves to subroutine Backspace 117 where it places the program in stop mode, moves the file pointer back by the amount set by subroutine Set Backspace 115, then resumes play. The program then proceeds back to subroutine Detect User Input 109 where it awaits further user input.

24

If subroutine Is Adjust Speed **118** determines that the user input is a request to adjust the playback speed, the program proceeds to subroutine Adjust Speed **119** where it adjusts the sampling rate of the Digital to Analog Converter **205**. The program then proceeds back to subroutine Detect User Input **109** where it awaits further user input.

If subroutine Is Volume **120** detects that user input is a request to adjust the volume level of playback, the program moves to subroutine Adjust Volume **121** which, in the preferred embodiment, adjusts the volume level of the Sound Mixer **204**. The program then proceeds back to subroutine Detect User Input **109** where it awaits further user input.

If subroutine Is Toolbar **122** detects that the user input is a request to view the program as a toolbar, the program moves to subroutine Toolbar **123** which sizes the face of the program to a small, always on top, toolbar. This feature is used in the preferred embodiment and it allows the reporter to run a word processor on the same computer as the invention and at the same time. The program then proceeds back to subroutine Detect User Input **109** where it awaits further user input.

If subroutine Is Stop **124** determines that the user input is a request to place the program into stop mode, the program moves to subroutine Stop **125**

25

where it stops writing data from the Analog to Digital Converter 205 to the storage medium and places the program into stop mode. The program then proceeds back to subroutine Detect User Input 109 where it awaits further user input.

If subroutine Is Rewind 126 determines that the user input is a request to rewind the record, the program moves to subroutine Rewind 127 where it decrements the file pointer at a predetermined rate. The program then proceeds back to subroutine Detect User Input 109 where it awaits further user input.

If subroutine Is Fast Forward 128 determines that the user input is a request to fast forward the record, the program moves to subroutine Fast Forward 129 where it increments the file pointer at a predetermined rate that is faster than the normal play rate. The program then proceeds back to subroutine Detect User Input 109 where it awaits further user input.

If subroutine Is See Case Information 130 determines that the user input is a request to see Case Information, the program moves to subroutine Display Case Information 131 where the program displays the information contained in the database depicted by Fig. 3. The program then proceeds back to subroutine Detect User Input 109 where it awaits further user input.

26

If subroutine Is Change Track 133 determines that the user input is a request to change the playback track, the program moves to subroutine Determine Track 134 where it determines from user input which track to play. After determining which track to play, the program moves to subroutine Set Track 135 where it sets the track by, in the preferred embodiment, parsing the audio data and delivering only the selected track to the Digital to Analog Converter 205. The program then proceeds back to subroutine Detect User Input 109 where it awaits further user input.

If subroutine Is See Notes 138 determines that user input is a request to see the notes, the program moves to subroutine Display Notes 137 where the program displays the notes to the reporter. The program then moves to subroutine Is Play Notes 139 where it determines if further user input is a request to play the record at the point of a note. If further user input is a request to play the record at the point of a note, the program moves to subroutine Find Note 140 where it selects the row for the requested note from the database depicted by Fig. 2. From there, the program moves to subroutine Play Note 141 where it moves the file pointer to the position indicated in the File Position Field 401 of the selected row and places the program into play mode. If further user input is not a request to play the record at the point of a

27

note, the program moves to subroutine Close Notes 138 where it determines if

further user input is a request to close the notes.  If further user input is not a

request to close the notes, the program moves back to subroutine Is Play Notes

139 and continues looping until the user requests to close notes. The program

then proceeds back to subroutine Detect User Input 109 where it awaits further

user input.

If subroutine Is Change Shortcut Keys 142 determines that the user

input is a request to change the short-cut keys, the program moves to

subroutine Display Modification Window 143 which allows the user to select

short-cut keys for the functions of the program.  The program then moves to

subroutine Modify Short-cut Keys 144 where it places the new short-cut keys

into effect. The program then proceeds back to subroutine Detect User Input

109 where it awaits further user input.

If subroutine Is Copy 145 determines that the user input is a request to

copy the record data, the program moves to subroutine Copy 146 where it

allows user input to select the destination of the record and copies the files that

comprise the record. The program then proceeds back to subroutine Detect

User Input 109 where it awaits further user input.

28

If subroutine Is 5/16 **147** determines that user input is a request to place the program in 5/16 inch per second mode, the program moves to subroutine Set 5/16 **148** where it sets the sampling rate of the Digital to Analog Converter **205** to 25% of normal. The program then proceeds back to subroutine Detect User Input **109** where it awaits further user input.

If subroutine Is End **149** determines that the user input is a request to end the program, the program proceeds to subroutine Terminate **150** which saves all current control settings and file positions to a file used to begin the program in the same place when it is restarted. The program then removes itself from memory and terminates.

Thus is described a computerized voice writer court reporting system which accomplishes its desired objectives. Although the description above contains many details, these should not be construed as limiting the scope of the invention but merely as providing illustrations of some of the preferred embodiments of this invention. For example, questions could be marked as stricken by, instead of using a Stricken field **405** in the database, filling the Event Type field **403** of the database with a Stricken value instead of a Question value; the user interface could include a voice recognition system, etc.

PTO/SB/09 (10-96)
Approved for use through 10/31/99. OMB 0651-0031
Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| VERIFIED STATEMENT CLAIMING SMALL ENTITY STATUS (37 CFR 1.9(f) & 1.27(b))–INDEPENDENT INVENTOR | Docket Number (Optional) |
|---|---|

Applicant or Patentee. _____Tsephanyah Yisrayl Hawkins_____

Application or Patent No.: _____

Filed or Issued: _____

Title: _____Computerized Voice Writer Court Reporting System_____

As a below named inventor, I hereby declare that I qualify as an independent inventor as defined in 37 CFR 1.9(c) for purposes of paying reduced fees to the Patent and Trademark Office described in:

[✓] the specification filed herewith with title as listed above.

[ ] the application identified above.

[ ] the patent identified above.

I have not assigned, granted, conveyed, or licensed, and am under no obligation under contract or law to assign, grant, convey, or license, any rights in the invention to any person who would not qualify as an independent inventor under 37 CFR 1.9(c) if that person had made the invention, or to any concern which would not qualify as a small business concern under 37 CFR 1.9(d) or a nonprofit organization under 37 CFR 1.9(e).

Each person, concern, or organization to which I have assigned, granted, conveyed, or licensed or am under an obligation under contract or law to assign, grant, convey, or license any rights in the invention is listed below:

[✓] No such person, concern, or organization exists.

[ ] Each such person, concern, or organization is listed below.

Separate verified statements are required from each named person, concern, or organization having rights to the invention averring to their status as small entities. (37 CFR 1.27)

I acknowledge the duty to file, in this application or patent, notification of any change in status resulting in loss of entitlement to small entity status prior to paying, or at the time of paying, the earliest of the issue fee or any maintenance fee due after the date on which status as a small entity is no longer appropriate. (37 CFR 1.28(b))

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under section 1001 of Title 18 of the United States Code, and that such willful false statements may jeopardize the validity of the application, any patent issuing thereon, or any patent to which this verified statement is directed.

| Tsephanyah Yisrayl Hawkins | Riyyahnah Tipharahyah Hawkins | |
| NAME OF INVENTOR | NAME OF INVENTOR | NAME OF INVENTOR |
| Tsephanyah Yisrayl Hawkins | Riyyahnah Tipharahyah Hawkins | |
| Signature of inventor | Signature of inventor | Signature of inventor |
| 7/7/97 | 7/7/97 | |
| Date | Date | Date |

Burden Hour Statement: This form is estimated to take 0.3 hours to complete. Time will vary depending upon the needs of the individual case. Any comments on the amount of time you are required to complete this form should be sent to the Chief Information Officer, Patent and Trademark Office, Washington, DC 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Assistant Commissioner for Patents,

1/15



*Fig. 1.*

2/15

## Fig. 2.



| Key (Auto number) | File Position | Event Type | Dis-played? Y/N | Stricken? Y/N | Extra Data Length | Extra Data | Courtroom Digitized Audio Data (Not a Database Field) | Reporter Digitized Audio Data (Not a Database Field) |
|---|---|---|---|---|---|---|---|---|
| 1 | 12,789,000 | ON-RECORD | N | N | 8 | 10:57 AM | On The Record | On The Record |
| 2 | 17,973,987 | QUESTION | N | N | 0 | NULL | Mr. Burton, on the night of October 18, 1996.... | Mr. Burton, on the night of October 18, 1996... |
| 3 | 20,987,453 | OBJECTION | N | N | 0 | NULL | Objection, Your Honor | Objection, Your Honor |
| 4 | 23,776,842 | SPELLING | N | N | 10 | Quiescent | Quiescent | Quiescent |
| 5 | 25,987,009 | QUESTION | N | Y | 0 | NULL. | Where were you on the night— strike that | Where were you on the night— strike that |
| 6 | 27,000,879 | ALERT | N | N | 0 | NULL | | A video tape Marked Exhibit A. |

410 — (Key (Auto number)) 401
411 
412 
413 
414 
415 

401 402 403 404 405 406 407 408 409

# Fig. 3.

| Docket # | 92D 1342-D1 |
|---|---|
| Case Name | Hearnst V. Young |
| Suffolk | Essex |
| Court | Probate |
| Volume | 3 |
| Deposed | Virginia Young |
| Direct Examination By | Robert Townly, Esq. Townly & Townly 222 Wakefield Street Winterstown, PA 02110 Representing The Defendant. |
| Cross Examination By | Timothy Heal, Esq. Heal & Heal 34 Main Street Watertown, MA 07865 Representing the Plaintiff |
| Stipulations | Usual |
| Days | 30 |
| Other | Hearnst sat in. |

4/15



Fig. 4.

5/15

# Fig. 5.



6/15



Fig. 6.

7/15



Fig. 7.

8/15



FIG. 8.

9/15



Fig. 9.



10/15

Fig. 10.

11/15



*Fig. 11.*

12/15



Fig. 12.

13/15



*Fig. 13.*

14/15

*Fig. 14.*



15/15



Fig. 15.

008006