IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| TSEPHANYAH Y. HAWKINS and | ) | |
| YAHCHANAN Y. HAWKINS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CLAUDIA M. HUTCHISON; | ) | |
| NORMAN M. OSTER; | ) | |
| STENOSCRIBE, INCORPORATED; and | ) | |
| VOCEDIT, INC., | ) | |
| | ) | Civil Action No. 1:05-CV-184-C |
| Defendants. | ) | ECF |

## ORDER

Came on this day for consideration Plaintiffs Tsephanyah Hawkins and Yahchanan

Hawkins' ("Plaintiffs") Rico Case Statement [#237], filed on April 16, 2007, in response to the

Court's RICO Case Standing Order.  The Court, after considering Plaintiffs' Case Statement, is

of the opinion that the Case Statement lacks sufficient specificity to proceed pursuant to Federal

Rule of Procedure 9(b).  Therefore, Plaintiffs' actions pursuant to 18 U.S.C. § 1962(a), (c), and

(d) are **DISMISSED without prejudice**.

## I.
## BACKGROUND

Although the Court has set forth the facts of this case at length in other orders, it is

incumbent upon the Court once again to recite the litany of facts which led up to this litigation.

According to the Case Statement, Defendants Hutchison and Oster wrongfully obtained a

series of court orders which allegedly subjected Plaintiffs to a state of involuntary servitude and

limited Plaintiffs' First Amendment rights.  Indeed, the "slavery" to which Plaintiffs claim they

were subjected resulted from the threat of contempt of court which undergirded the court order.

Further, Plaintiffs claim that Defendants and other nonparties engaged in an "enterprise"

designed to deprive them of intellectual and real property by criminal means. Specifically,

Plaintiffs claim that Defendants and certain nonparties worked to deprive them of court-reporting

computer programs and hardware which they developed and attempted to market. Plaintiffs

(rather cryptically and without excessive elaboration) allege that Defendant Hutchison stole

checks rightfully payable to Plaintiffs. Thereafter, Defendants allegedly used those checks to set

up bank accounts which assisted them in laundering the money they earned as a result of

Plaintiffs' "enslavement." Plaintiffs further claim that Defendants engaged in wire fraud and

mail fraud as a mechanism of furthering their misappropriation of funds. Further, Plaintiffs

cursorily allege that several nonparties aided the "enterprise" through their legal knowledge,

marketing skills, and complicity with Defendants' actions.

Plaintiffs sued Defendants for, *inter alia*, violations of the Racketeer Influenced and

Corrupt Organizations Act (RICO). Specifically, Plaintiffs allege that Defendants violated 18

U.S.C. § 1962(a), (c), and (d) by committing acts of mail fraud and wire fraud.

## II.
## STANDARD

Federal Rule of Civil Procedure 9(b) applies to RICO claims which rest on fraud.

*Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). In the present case, Plaintiffs

have alleged that Defendants violated § 1962(a) and (c) by using wire fraud and mail fraud. The

elements of wire fraud include (1) a scheme or artifice to defraud; and (2) the use of wire

communications in furtherance of the fraudulent scheme. *United States v. Rajwani*, 476 F.3d

243, 247 (5th Cir. 2007). The elements of mail fraud as a predicate offense for civil RICO

purposes are: (1) a scheme or artifice to defraud or obtain money or property by means of false

or fraudulent pretenses, representation or promises; (2) interstate or intrastate use of the mails for

the purpose of furthering or executing the scheme or artifice to defraud; (3) the use of the mails

by the defendant connected with the scheme or artifice to defraud; and (4) actual injury to the

business or property of the plaintiff. *Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 901 F.2d

404, 428 (5th Cir. 1990). "At a minimum, Rule 9(b) requires allegations of the particulars of

time, place and contents of the false representations, as well as the identity of the person making

the representation and what he obtained thereby." *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975

F.2d 1134, 1139 (5th Cir. 1992) (quoting 5A Charles Alan Wright & Arthur Miller, <u>Federal

Practice and Procedure: Civil</u> § 1297 at 590 (1990)) (internal quotation marks omitted); *see also*

*Williams*, 112 F.3d at 177; *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1968 (5th Cir.

1994).

"[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the

statements contended to be fraudulent, identify the speaker, state when and where the statements

were made, and explain why the statements were fraudulent." *Williams*, 112 F.3d at 177.

However, some litigants in the past have argued that the requirement of particularity in pleading

is contrary to the general concept of notice pleading which is encouraged by the Rules. The

Fifth Circuit has clarified this apparent discrepancy:

> The cry of pleading technicalities must be put in perspective. The
> rules of civil procedure adopted in 1938 implemented a profound
> change in the role of pleading in defining issues for trial. In the
> main, the complaint became an ignition point for discovery. Issues
> were to be "defined" by discovery, not pleading. Our reverential
> treatment of the large achievements of the 1938 rules may not have
> fully counted its price, or at least the price over time seems to have
> gone up as pretrial process dwarfs actual trials. We do not fully

understand the extent of these difficulties or their cause.  It does
remain clear that ready access to the discovery engine all the while
has been held back for certain types of claims.  An allegation of
fraud is one.  Rule 9(b) demands a larger role for pleading in the
pre-trial defining of such claims.

That said, the requirement for particularity in pleading fraud does
not lend itself to refinement, and it need not in order to make
sense.  Directly put, the who, what, when, and where must be laid
out . . . .  So today we neither set up springs for the unwary nor
insist on "technical" pleading requirements.  We remind that this
bite of Rule 9(b) was part of the pleading revolution of 1938.  In
short, we apply the rule with force, without apology.

*Id*. at 178.

## III.
## DISCUSSION

According to the Fifth Circuit, "[a] complaint can be long-winded, even prolix, without

pleading with particularity.  Indeed, such a garrulous style is not an uncommon mask for an

absence of detail."  *Id*.  Such is certainly the case here.  Plaintiffs' Case Statement and Second

Amended Complaint combined consist of approximately 190 pages.  These "pleadings" are

generally made up of Plaintiffs' bald accusations that they were enslaved by an allegedly ill–

intentioned state district judge[1]–acting in concert with Defendants and their cohorts–who issued

a temporary restraining order against Plaintiffs.  According to Plaintiffs, "the enslaving clauses"

of the order prevent Plaintiffs from "[n]ot fulfilling current obligations or commitments to

customers . . . [and] [n]ot providing software upon request by [the Defendants in the present

case] or in conjunction with any current orders."  (Pls.' Case Statement 2.)  Plaintiffs claim that

this order had the effect of making indentured servants, bound over to Defendants.  Further,

---

[1]Though named as a defendant in this lawsuit, the state court judge has been dismissed by
prior orders of this Court.

4

Plaintiffs' bald accusations include allegations that Defendants were involved in a plot to murder Tsephanyah Hawkins and that they stole his ideas for developing certain court-reporting software and computer hardware geared toward court reporting.

This Court has thoroughly combed the extensive pleadings in this case. Even though the pleadings consist of approximately 190 pages, they are devoid of the specificity necessary to comply with Rule 9(b).

### *Plaintiffs' RICO Claims*

As mentioned earlier, Plaintiffs have attempted to state claims against Defendants for violations of 18 U.S.C. § 1962(a), (c), and (d). Subsection (a) forbids a person who has received income from a pattern of racketeering activity to invest that income in an enterprise. *Abraham v. Singh*, 480 F.3d 351, 354 (5th Cir. 2007). Subsection (c) forbids a person who is employed by or associated with an enterprise from conducting the affairs of the enterprise through a pattern of racketeering activity. *Id*. at 354-55. Finally, subsection (d) forbids a person to conspire to violate subsections (a), (b), or (c). *Id*. at 355.

Regardless of the subsection under which a plaintiff sues, RICO claims under § 1962 have three common elements: "(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise." *Id*. (quoting *Word of Faith Outreach Ctr. Church v. Sawyer*, 90 F.3d 118, 122 (5th Cir. 1996)) (internal quotation marks omitted); *see also Elliot v. Foufas*, 867 F.2d 877, 880 (5th Cir. 1989). Because of the confusing nature of RICO claims, the Fifth Circuit has carefully explained each element of a § 1962 cause of action.

5

"Racketeering activity" for the purposes of § 1962 "consists of two or more predicate criminal acts that are (1) related and (2) amount to or pose a threat of continued criminal activity." *Id*. "The element of relatedness is established if the acts have the same or similar purposes, results, participants, victims, or methods of commission." *Word of Faith*, 90 F.3d at 122 (quoting *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 240 (1989)) (internal quotation marks omitted). Continuity may be established by a plaintiff showing that the racketeering activity is continuous, or threatens to be continuous. *Id*. Continuity may be either open-ended or closed-ended. *Id*. However, "it is unnecessary to delve into the arcane concepts of a closed-ended or open-ended continuity under RICO in cases "where alleged RICO predicate acts are part and parcel of a single, otherwise lawful transaction, for in such cases, a pattern of racketeering activity has not been shown." *Abraham*, 480 F.3d at 355 (quoting *Word of Faith*, 90 F.3d at 123) (internal quotation marks omitted).

Next, "[t]he existence of an enterprise is an essential element of a RICO claim." *Atkinson v. Anadarko Bank & Trust Co.*, 808 F.2d 438, 440 (5th Cir. 1987). In order to avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations, which establish the existence of an enterprise." *Elliot*, 867 F.2d at 881. In the present case, Plaintiffs argue that Defendants and their cohorts were involved in an association-in-fact enterprise. Therefore, Plaintiffs must show "evidence of an ongoing organization, formal or informal, and evidence that the various associates function as a continuing unit." *Id*. (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)) (internal quotation marks and ellipses omitted). "The enterprise must be an entity separate and apart from the pattern of activity in which it engages." *Id*. at 441 (quoting *Turkette*, 452 U.S. at 583). Further, a "plaintiff must

6

plead specific facts which establish that the association exists for purposes other than simply to commit the predicate acts." *Elliot*, 877 F.2d at 881.

### *Plaintiffs' Lack of Specificity as to Each Claim*

#### *a. § 1962(a)*

"To state a claim under subsection (a), a plaintiff must allege an injury from the use or investment of racketeering income." *Abraham*, 480 F.3d at 356 (quoting *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 441 (5th Cir. 2000)) (internal quotation marks omitted). Further, "[a]n injury arising solely from the predicate racketeering acts themselves is not sufficient." *Id.* (quoting *Nolen v. Sucentrix Broadband Networks, Inc.*, 293 F.3d 926, 929 (5th Cir. 2002)). Most importantly, "[c]onclusory allegations are insufficient to state a claim under § 1962(a)." *Id.*

In the present case, Plaintiffs have not specifically alleged any facts which show that their injuries stem from Defendants' investment of racketeering income through mail fraud and wire fraud. Apparently, as best as this Court can determine from the rambling, noncommittal pleadings, Plaintiffs' § 1962(a) claims rest on allegations of wire fraud and mail fraud. Specifically, Plaintiffs have alleged that Defendants have stolen checks payable to Plaintiffs and that Defendants wrongfully profited from Plaintiffs' endeavors. Plaintiffs have hurled across the field of litigation various bald assertions and allegations unsupported by facts. Indeed, Plaintiffs have never alleged the "who, what, when, where, and how" of how Plaintiffs fraudulently (or otherwise) invested these funds in an enterprise in violation of § 1962(a). At best, Plaintiffs' allegations regarding Defendants' alleged violations of § 1962(a) are vague, ambiguous, and without any specificity whatsoever. Plaintiffs state that their § 1962(a) claims are based on wire

fraud and mail fraud.  However, their pleadings simply fail to adequately specify the facts upon which their § 1962(a) claims are based.

As mentioned previously, both Plaintiffs and Defendants have inundated this Court with lengthy pleadings and thousands of pages of attachments.  In light of these thousands of pages of documents, the Fifth Circuit's opinion in *Old Time Enterprises v. International Coffee Corporation*, 862 F.2d 1213 (5th Cir. 1989), aptly states this Court's position:

> It is perhaps not impossible that a RICO claim may lie hidden or buried somewhere in [Plaintiffs'] complaints and the Standing Order case statement. [Plaintiffs'] pleadings do not unequivocally negate such a possibility.  However, they also do not state a RICO claim against [D]efendants with sufficient intelligibility for a court or opposing party to understand whether a valid claim is alleged and if so what it is.

*Id*. at 1218.  In short, Plaintiffs' pleadings and Case Statement fail to intelligibly articulate specific facts which support their contentions of wire fraud and mail fraud, and how such fraud assisted Defendants in violating § 1962(a).  Therefore, Plaintiffs' RICO claim pursuant to § 1962(a) cannot stand and should be dismissed.

### ***b. § 1962(c)***

As mentioned above, Plaintiffs have alleged that Defendants were associated with a common enterprise, and conducted the affairs of that enterprise through a pattern of racketeering activity.  Specifically, the pattern of racketeering activity which Plaintiffs suggest is based upon vaguely-alleged instances of mail fraud and wire fraud.  These conclusory allegations of fraud include Defendants' fraudulently maintaining bank accounts, setting up shell corporations, and fraudulently directing other parties to aid them in their pursuits.

Again, Plaintiffs have failed to plead specific facts surrounding their allegations of fraud which undergird their § 1962(c) claims. Indeed, this Court has scoured the extremely lengthy record and has not found any specific allegations regarding the "who, what, when, where, how, and why" of the allegations of mail fraud and wire fraud upon which the § 1962(c) allegations rest. Indeed, the allegations of mail fraud and wire fraud simply consist of the recitations of the terms "mail fraud" and "wire fraud," or some derivation of those terms of art. Although Plaintiffs recite a large number of facts, none of them seem to be connected in any way with fraud. Again, the Fifth Circuit's analysis in *Old Time Enterprises* is helpful here: While it is not utterly impossible that Plaintiffs' pleadings may contain small nuggets of fact which could be construed as sufficient for the purposes of Rule 9(b), Plaintiffs' pleadings are simply not intelligible. In short, Plaintiffs have failed to carry their burden to specifically plead the facts surrounding their allegations of mail fraud and wire fraud.

### *c. § 1962(d)*

The Fifth Circuit has held that "[t]he failure to plead the requisite elements of either a § 1962(a) or a § 1962(c) violation implicitly means that [Plaintiffs] cannot plead a conspiracy to violate either section." *Nolen*, 293 F.3d at 930 (quoting *Simon v. Value Behavioral Health, Inc.*, 208 F.3d 1073, 1084 (9th Cir. 2000)). While the court's reasoning in *Nolen* surrounded a review of the district court's dismissal pursuant to Rule 12(b)(6), it equally applies in this case. If a plaintiff has failed to plead specific facts pursuant to Rule 9(b) such that he may not sustain an action under §1962(a) or (c), then it logically follows that the plaintiff may not sustain an action for conspiracy of those statutes. As mentioned above, Plaintiffs have failed to specifically allege facts supporting their allegations of mail fraud and wire fraud which surround their claims

pursuant to § 1962(a) and (c).  Therefore, they cannot sustain allegations of conspiracy to violate those sections.

In conclusion, the Court notes that Plaintiffs' pleadings are replete with facts.  For instance, Plaintiffs go so far as to give the name of the dog which usually barks upon Plaintiffs' return home.  However, the pleadings simply fail to adequately plead facts surrounding the alleged mail fraud and wire fraud in which Defendants supposedly engaged.  Therefore, Defendants have failed to clear the substantial hurdle which Rule 9(b) places before allegations of fraud.  Therefore, such claims should be dismissed.

**IV.**
**CONCLUSION**

For the reasons stated herein, Plaintiffs' causes of action pursuant to the RICO statute are hereby **DISMISSED**.

All relief not specifically granted herein is hereby denied.

SO ORDERED this 10th day of May, 2007.

SAM R. CUMMINGS
UNITED STATES DISTRICT COURT